No. 42.—KAPPEL S. KAHN, plaintiff in error, vs. DANIEL HERMAN, defendant in error.

[1.] An affidavit taken for the issuing of an attachment, signed by Daniel Herman and attested by a judicial officer, which in its body describes the person sworn as *Daniel Harman*, is a sufficient oath under our attachment laws.

[2.] An attachment bond which contains the conditions prescribed by law, and the further condition, that the plaintiff *shall prosecute his suit with effect at the term to which it is returnable*, is substantially in conformity with the statute, and sufficient to prevent the dismission of the attachment.

Attachment. ` Tried before Judge HILL. In Cobb Superior Court. March Term, 1847.

It appeared upon inspection of the affidavit upon which the ·attachment issued, that it was subscribed by "*Daniel Herman,*" when the name inserted in the body of it as descriptive of the person who appeared before the magistrate and was sworn, was " *Daniel Harman.*" In the bond and also in the attachment, " *Daniel Herman* " was named as the plaintiff in attachment.

It appeared also that a part of the condition of the bond was, that the plaintiff " *should prosecute said attachment with effect at said court.*"

Upon the trial, a motion was made in behalf of the defendant to dismiss the attachment, on the ground that the certificate of the magistrate showed that " *Daniel Harman* " appeared and made affidavit, and that "*Daniel Herman* " was the party who gave the bond, and in whose favour the attachment issued. That the law prescribes the form of the bond to be given in cases of attachment, and declares that every attachment issued without such bond taken, is illegal and shall be dismissed with costs; and that the bond given in this case contains a condition not authorized or required by the

Kahn *vs.* Herman.

attachment laws, to wit, that said Daniel Herman *should prosecute said attachment with effect at said Court.*

The motion was overruled by the Court below, the presiding judge holding that the name of " *Herman*" and " *Harman*," though differently spelled, were *idem sonans* in vulgar and ordinary pronunciation. And that the addition to the conditions of the bond complained of, did not alter its sense, and was therefore immaterial.

To which decision the counsel for the plaintiff in error, who was the defendant in attachment, excepted.

McDONALD, for the plaintiff in error.

The process of attachment is a new creature of the statute, and can have no legal existence unless the forms of creation prescribed by the statute are strictly pursued. 19 *Wend.* 49. By the statute of New York, the court, or any judge thereof in vacation, is authorized to issue attachments. In the case in Wendell, a judge in term time issued the attachment, and it was held to be irregular, and dismissed.

Case of attachments is not one in which the voluntary appearance of the defendant will confer jurisdiction. 4 *Hill N. Y. R.*

Attachment laws are to be strictly construed. The making affidavit and giving bond are conditions precedent to granting the attachments. 1 *Dever. R.* 399.

In an application for an attachment under the New York statute, the plaintiff must state that his demand arose upon a contract, or upon a judgment or decree rendered within that State. 6 *Wend.* 553.

To succeed under the attachment law of Maryland, the plaintiff must bring himself within its provisions. 5 *Har. & Johns.* 134.

These decisions show the uniform strictness with which attachment laws are every where construed.

In the case now before the Court, the plaintiff below has not followed the directions of the attachment law. He has not complied with or performed a condition precedent to his right to the attachment. Our attachment law prescribes the form of the bond which the plaintiff shall give, and the plaintiff in this case has gone beyond the requisition of the law, and added a condition not required by law. Upon the principle of the foregoing authorities, that attachment must fail. But our statute not only prescribes the

form of the bond, but also declares every attachment issued without *such* bond taken, to be illegal, and requires it to be dismissed with costs. The statute further declares, that all attachments issued and returned in any other manner than is by the statute directed, shall be null and void. The bond taken is not "the same that" the statute requires; not being the same, there is no discretion with the Court, and it must be dismissed—so that the statute declares. This has been, I believe, the general decision under our judiciary system. The principle was maintained in *Welman* vs. *Polhill and others*, *R. M. Charlton R.* 236. If the statute declares a bond void unless a particular form is pursued, it is all void. 10 *Peters R.* 362; 6 *Har. & Johns. R.* 446, 454.

Irvin for defendant in error.

1. It is not necessary that the oath taken before the magistrate, previous to granting the attachment, should be in writing; and that the oath recited in the body of the attachment, is the oath upon which it issued. *Hotchk.*551; 1 *Nott & McCord, R.* 205, 207.

2. *Harman* is but a corruption of *Herman*, and they are taken promiscuously to be the same in common use, though they differ in sound. 7 *Bacon*, 5, 6, *and authorities there cited*.

When a name appears to be a foreign one, a variance of a letter, which according to the pronunciation of that language does not vary the sound, is not a misnomer, as *Petris for Petrie.* 3 *Caines R.* 219; 7 *S. & R.* 497; 2 *N. Hamp. R.* 557. So it seems, if there is an abbreviation or corruption of a true name by common use, the true and corrupted name are taken to be the same. 1 *Wash. C. C. R.* 285.

3. Misnomer of parties in a writ or indictment, must always be pleaded in abatement, or the right to the exception is lost. 4 *Cow. R.* 148; 10 *Serg. & Rawle* 257; 1 *Mass. R.* 76; 2 *Wash. C. C. R.* 200; 6 *Munf. R.* 219.

Misnomer in the capias, and a variance betweeen the name in the writ and declaration, must be pleaded in abatement. 1 *Munroe* 174; *Harper R.* 49; 1 *Chitty Pl.* 440.

4. The defendant in attachment having put in special bail, and pleaded to the declaration, the attachment is dissolved, and he cannot except to it. *Hotchk.* 653, 554.

The misnomer could not be put in issue by the defendant as to any matter contained in the affidavit.

The bond is in compliance with the statute, and the excess is surplusage, and does not vitiate the bond.

In a bond prescribed by statute, if more be added than the law requires, it will not vitiate the bond unless the matter be illegal. 9 *Pick. R.* 403.

*By the Court.*——NISBET, J. delivering the opinion.

The errors complained of in this case, grew out of exceptions taken to the oath and the bond in an attachment cause. The first exception to the attachment was, that the affidavit was signed by *Daniel Herman*, and the name which was inserted in the body of the affidavit was *Daniel Harman*, and therefore there was no sufficient oath according to the attachment law, taken by the plaintiff in attachment, *Daniel Herman*.

The second exception was, that the bond given by the attaching creditor in its conditions exceeded the requirements of the law, in this, that a part of the condition of the bond is, that the plaintiff "*should prosecute said attachment with effect at said court*," and therefore the attachment ought to be dismissed.

The Court below, Judge Hill presiding, overruled both of these exceptions; and to his decision in these regards, the plaintiff in error excepts.

The attachment law requires that the party suing out an [1.] attachment, shall make oath to certain facts before the attachment process shall issue. The process issued in this case in favour of *Daniel Herman ;* in the process itself it is recited that *Daniel Herman* made the oath, and the bond is given by *Daniel Herman*, and his name is signed to the affidavit. A binding oath, we admit, is a condition precedent to the issuing of the attachment, and if this is not such an oath, it ought to be dismissed. The only objection to it is, that the affidavit itself recites that *Daniel Harman*, instead of *Daniel Herman*, appeared before the magistrate and was qualified. The Court below thought that this exception came under the rule of *idem sonans ;* that, although the one name was spelled with an *e*, and the other with an *a*, in ordinary parlance and according to the vulgar and usual pronunciation, they were the same.

We are inclined to think with Judge Hill, that this is an instance of *idem sonans*. The sound of *a*, in the common use of this name, we can well conceive to be given to *e*. But we are not inclined to hold a very rigid rule as to this kind of pleadings; under the

stringent rules of the old common law, now happily relaxed, it- is the impression of this Court that this might be held *idem sonans*. We shall not apply those rules to this affidavit. The question upon which this exception turns, is, was there an oath taken upon which *Daniel Herman* could be convicted of perjury? If there was, the requirements of the statute are fulfilled. We think there was. It was regularly administered before a judicial officer, as appears from the certificate of the justice of the Inferior court accompanying and attached to it, and the certificate declares that the affidavit *was sworn to* before the officer. To whom does this certificate allude? To the person named in the body of the affidavit, or to him whose name is subscribed to it? Ordinarily they are the same; but if they are, for the sake of the argument, different persons, to whom does the certificate refer? I should say, to him who has identified himself with the affidavit by putting his name to it. But there can be but little doubt, that if the name of the wrong person was by mistake subscribed to the affidavit, and the person whose name is inserted in the body of the affidavit was the individual really sworn, the matter could be explained by the testimony of the magistrate, and the latter convicted. So the variance, if this be one, can also be explained as the matter stands in this case, and the identity of the subscriber with the individual really sworn, be established by proof. In an indictment for perjury upon this affidavit, the identity of *Daniel Herman*, when produced in court, with the party who actually took the oath, would be sufficiently established by proof of his hand writing, and the evidence of the magistrate before whom the oath was taken. 2 *Chitty Crim. Law*, *top page* 165, *marg.* 313; 2 *Burrow R.* 1189; 1 *Leach* 50, 327; 2 *Camp. R.* 509.

The case of *The King* vs. *John Morrison*, reported in 2 *Burrow* 1189, was an indictment for perjury, in swearing to an answer in chancery. It was objected on the trial, " that there was no proof of the identity of the person who swore to the answer, nor even proof that any person at all swore to it." Lord Mansfield and the whole court held, " that as the name subscribed to the answer was proven to be the hand-writing of the defendant, and the master had proven that the jurat was subscribed by him, as being sworn before him; this was sufficient proof that he was the same person, and also that he actually swore it." The court further say, " and as to the actual swearing, it is in the nature and course of business quite necessary to take the jurat, attested by the proper person before whom the oath ought to be taken, as sufficient proof of its being

actually sworn by the person, so far at least as to put it upon him to show, or to raise a reasonable suspicion, that he was personated, as it would be otherwise almost impossible to convict any one of perjury committed in an answer in chancery."

If in this case, upon an indictment for perjury, such proof were had, what could *Daniel Herman* reply ? He might reply, if it were so, that he was personated, or that his name was subscribed by mistake; but would it be a sufficient reply, that in the body of the affidavit it appeared that *Daniel Harman* was the person actually sworn ? I am sure it would not. This affidavit, too, is to be taken in connexion with the facts, that the attachment recites that *Daniel Herman* was sworn, and that the attachment bond was executed by him. We do not find that Judge Hill committed any error in this regard.

The statute of Georgia declares that the attachment shall [2.] issue, *provided* that the officer before whom application shall be made " shall take bond and security of the party for whom the same may be granted, in a sum equal to double the amount sworn to be due, payable to the defendant, for satisfying and paying all costs which may be incurred by the defendant, in case the plaintiff suing out such attachment shall discontinue or be cast in his suit, and also all damages which may be recovered against said plaintiff for suing out the same." The same act further declares every attachment issued without such bond taken, to be illegal, and shall be dismissed with costs. *Prince* 31. The conditions of the bond which the statute requires are,

1. That in the event that the plaintiff shall discontinue or be cast in his suit, the obligors will pay the defendant the costs which may be incurred, and

2. In that event, that they will pay him all damages which may be recovered against the plaintiff for suing the attachment.

The bond given in the case under review contains the two conditions above expressed, and also the further condition, as it is said to be, *that the plaintiff shall prosecute his attachment with effect at the court to which it is returnable ;* and because of this further condition, it is said not to conform to the statute, and therefore the attachment ought to be dismissed.

The object of the bond required by the statute, is the protection of the citizen against frivolous or vexatious suits of this kind. The benefits of it are the defendant's; the burden is the plaintiff's. It is material to remark, that the statute does not declare the bond

Kahn *vs.* Herman.

to be void, unless taken in conformity with its provisions; but that if such a bond is not given as the statute requires, the attachment shall be dismissed with costs. This declaration is also unques-tionably for the benefit of the defendant in attachment. It was not made in order to secure a bond in strict conformity with its provisions, so as to protect the plaintiff from incurring obligations greater than the statute imposes, but to insure to the defendant his costs and damages, if the plaintiff should discontinue or be cast in his suit. A moment's consideration will satisfy that such was the intention of the legislature. These things being premised, I state *first*, that this bond is, to all legal intents and purposes, in conformity with the statute. The statute requires a bond, con-ditioned to pay to the defendant his *costs and damages*, in case the plaintiff shall discontinue or be cast in his suit. On such a bond, what can be recovered out of the plaintiff and his sureties? The *costs and damages*, and no more. And, upon what does the recovery of costs and damages depend? I answer, upon the plaintiff's *discontinuing or being cast in his suit*. *Discontinuing his suit*, in the connexion in which these terms are used, in my judg-ment, means such a failure to prosecute it, as at any stage of the cause, will compel the court to dismiss—that is, to *discontinue* it. A discontinuance of a suit, is similar to a non-suit When a plain-tiff leaves a chasm in the proceedings of his cause, or fails to do that from time to time, and from term to term, which in the regular prosecution of his suit he is by law bound to do, the suit is discon-tinued. *Jacob's Law Dictionary, title, discontinuance of process, vol.* 2, *p.* 284; 1 *Tidd* 678; 1 *Stra. R.* 492; 1 *Wils. R.* 40; 3 *Blackstone,* 296.

Blackstone says: "A discontinuance is somewhat similar to a nonsuit." And what is a nonsuit? "If the plaintiff neglects to deliver a declaration for two terms after the defendant appears, or is guilty of *other delays or defaults against the rules of law*, in any subsequent stage of the action, he is adjudged not to follow or pursue his remedy as he ought to do, and therefore a *nonsuit* or *non prosequitur* is entered." 3 *Black.* 296. Fortified by these considerations and authorities, I think I may with confidence adopt the definition of the terms *discontinue his suit*, above given.

Now, we inquire, what is the meaning of the condition in this bond, "to prosecute the suit with effect at the court to which it is returnable"? It is to do at that term all *that the law requires him to do—to be guilty of no default or delays against the rules of law.*

To prosecute with *effect*, is to prosecute with diligence, according to law. No other sensible definition can be given of this condition in the bond. If these things are so, the meaning of the condition *to prosecute with effect*, is the same with *not permitting the suit to be discontinued*, no more and no less; and the addition in the bond, to *prosecute with effect*, does not increase or vary the obligations of the plaintiff. Strike these words out, and if the plaintiff permits his suit to be discontinued he is still liable to costs and damages; retain them and he is liable to nothing more, and his liability is dependent upon the same thing, to wit, his diligence in the prosecution of his suit. It is said by the plaintiff's counsel, that "to prosecute with effect *at the court to which the attachment is returnable*," imposes the obligation to prosecute the suit to a *determination* at that term of the court; and therein it imposes more upon the plaintiff than *not to discontinue his suit*. We do not think so: those words, as already stated, mean that he shall do at *that term* what the law requires *there* to be done; and the law does not require—indeed will not permit—an attachment suit to be finally tried at the term to which it is returnable.

We think for these reasons, that the bond given, is substantially in conformity with the statute.

But, admitting that it is not *in exact* conformity with the statute, we then say that not only will not the attachment be dismissed for that cause, but the bond is not void for that cause. To render a bond taken under a statute, void, it must be so according to express enactment; or must be intended to operate as a fraud upon the obligors by colour of the law, or as an evasion of the statute. The statute requiring this bond to be given, does not expressly enact that it shall be void unless taken in exact conformity with its provisions; it says, in fact, nothing about the validity of the bond; it only declares that if such a bond as it requires is not given, *the attachment shall be dismissed with costs.* If the bond is not expressly enacted to be void unless taken in conformity with the statute, then the rule is, that a bond taken under such a statute, is good so far as it conforms to it, and void only so far as it does not conform. *Commissioners of the Treasury* vs. *Davis, cited in* 2 *Nott & McCord, R.* 426; *The State* vs. *Mayson, id.* 425; *Treasurer* vs. *Bates,* 2 *Bailey R.* 376; *Stephens et al.* vs. *Crawford, Gov. &c.,* 1 *Kelly, R.* 581. Under this rule the bond is good as to the other conditions, if it is void (which we have not admitted,) as to that condition which is claimed to be in disconformity with the

statute; and is therefore a sufficient bond to prevent the dismission of this attachment.

Let the judgment of the Court below be affirmed.