[No. 3440.]

WEBSTER ET AL. V. HEGINBOTHAM.

1. SUMMONS—*Service by Publication—Effect.* Where, in the publication of a summons, all the provisions of the code have been complied with, the presumption that the publication came to the notice of the defendant is conclusive as against collateral attack. The jurisdiction of the court to determine the cause and give judgment is as complete as upon personal service.

And under the code provision (Sec. 84) errors or defects not affecting the substantial rights of the defendant are disregarded.

2. LIS PENDENS—*Notice—Judgment Relates to.* Where a notice, technically correct, of the institution of an action to quiet title is filed in the recorder's office, the judgment in the cause relates back to the date of such filing.

3. NAMES—*Idem Sonans.* Monson and Munson are *idem sonans.* Lands were patented to John F. *Monson.* In an action to quiet an adverse title the defendant was described in the complaint, summons and notice of suit pending as J. Fred *Munson.* It was in evidence that *Monson's* middle name was Fred, and that his surname was commonly pronounced *Munson.* The adversary party gave no evidence that he had not received actual notice of the identity of the person named in the complaint, summons, and notice, with the person with whom he was negotiating for the land, or that he had examined the record, and was misled by the discrepancy in the names. A judgment by default upon such

published service was approved, and the notice was held to affect all those who, after its filing, dealt with Monson for the land. But the court adds that the doctrine of the opinion is not to be extended beyond the facts disclosed by the record.

*Appeal from Phillips District Court.* HON. H. P. BURKE, Judge.

Messrs. ALLEN & WEBSTER, for appellants.

Messrs. MUNSON & MUNSON, for appellee.

KING, J., delivered the opinion of the court.

This was a statutory proceeding by appellee to quiet title to certain lands in Phillips county, Colorado. The complaint was in the usual form, alleging title and possession in plaintiff and adverse claim by the defendants. For answer the defendant, B. M. Webster, (1) denied all allegations of the complaint except his adverse claim to the premises; (2) pleaded as an estoppel, and as an adjudication of the title, a judgment and decree of the county court of Phillips county in his favor, rendered May 8th, 1906, in a suit to quiet title in which he was plaintiff, and J. Fred Munson (and others whose names it is not necessary to mention) were defendants; alleged that notice of the pendency of said action was filed for record in the office of the county clerk and recorder of said county at the time of the commencement of said suit, to-wit, November 23rd, 1905, and that plaintiff in this case has no interest in said premises except as derived from the said J. Fred Munson; (3) title under a treasurer's tax deed. Defendant asked that his own title be quieted. For reply, plaintiff admitted the judgment and the filing of the notice of suit pending, but alleged that the judgment was null and void and the notice of no force or effect. The cause was tried to the

court without a jury and judgment rendered in favor of the plaintiff.

Plaintiff deraigned title by patent from the government to *John F. Monson,* dated August 5th, 1890, and recorded March 27th, 1907, and a quitclaim deed from said John F. Monson to plaintiff, dated and executed in Arkansas, May 7th, 1906, and recorded July 25th, 1906. No attempt was made to prove possession. Defendants offered in evidence the judgment roll of a case in the county court entitled *B. M. Webster v. Fred Munson et al.,* consisting of complaint, summons and return thereon, after ten days, that after diligent search the defendant could not be found, affidavit for publication, proof of publication and decree, in regular form and in full compliance with the provisions of the code relative to publication of summons and proof thereof, supported by the testimony of a witness that he had known the land, title to which was in dispute, for many years; that it had been occupied and owned by a man whose full name was *John Fred Monson,* but who was commonly known as *Fred Munson;* that the surname of said person was spelled M-o-n-s-o-n but pronounced as if it were spelled M-u-n-s-o-n. Plaintiff objected to the admission of the judgment roll, assigning as reason that the parties to the proceedings were not the same, but a different party both as to the initials and the surname, to-wit, that the patentee was named *John F. Monson,* while the defendant in the proceedings under consideration was *J. Fred Munson,* and that service upon said *John F. Monson* had not been obtained by the publication; also that the affidavit of publication showed that the name *J. Fred Munson* had not been properly published; but there were two affidavits of publication, one of which showed no error. The objections were overruled and the judgment roll admitted. The *lis pendens* notice was offered and re-

ceived in evidence without objection. This notice was
in the usual and regular form, as provided by the code,
describing the plaintiff, and the defendant in that case
(J. Fred Munson), with a full description of the land in
litigation. The evidence showed that aside from the
patent and quitclaim deed heretofore mentioned, both
of which were recorded long after the decree pleaded
as an estoppel, there was no record title to the land in
the name of *John F. Monson.* The trial court seems to
have rendered judgment upon the theory that, although
the evidence had established the identity of the patentee
with the defendant in the judgment pleaded, and that
the service by publication was sufficient as against said
defendant, yet, inasmuch as no showing had been made
that the plaintiff in this case had knowledge of the dif-
ferent pronunciations of the name *Monson,* he was not
bound nor affected by the recorded notice of suit pend-
ing, nor charged with knowledge or notice that the action
against the defendant in that case was in reality an
action against the patentee from whom he derived title
by quitclaim deed, and thereupon held the proceedings
in the county court and the notice of suit pending, a
nullity as to the plaintiff in this case, and that proof of
actual possession was unnecessary.

1. From the foregoing statement it is apparent that
the judgment appealed from must stand or fall according
to the effect to be given to the judgment against *Fred J.
Munson,* under service of summons by publication, and
to the notice of *lis pendens;* that is to say, whether, if
the proceedings were regular in every respect, such judg-
ment and notice were binding upon *John F. Monson* and
his assignee.

Substituted service by publication is permitted only
where personal service cannot be made, and in certain
classes of cases wherein specific property is to be af-

fected or the procedure is such as is known as a pro-
ceeding *in rem.*—Civil Code, Rev. Stats. 1908, section 45.
Provision for such service is made from necessity. The
actual or natural presumption that the defendant, usu-
ally a non-resident of the state, will see the published
notice, is not very strong, nor the probability great; but
the legal presumption that it has come to his notice, or,
in other words, that he has been regularly served with
summons, is conclusive as against collateral attack, in
case all requirements of the code have been complied
with, and thereafter the jurisdiction of the court to hear
and determine the cause is as full and complete as in
other cases of default after service; and that part of
the code which says: ''The court shall, in every stage
of an action, disregard any error or defect in the plead-
ings or proceedings which shall not affect the substantial
rights of the parties, and no judgment shall be reversed
or affected by reason of such error or defect,'' is ap-
plicable. In this case the court found and the record
shows that the judgment pleaded as an estoppel was
based not only upon substantial but technical compliance
with the provisions of the code relative to service of
summons by publication, so that as to the defendant,
*J. Fred Munson,* as well as to anyone claiming by,
through or under him, the judgment was both valid and
binding; and also that by reason of the record of the
notice of suit pending, as provided by the code, the effect
of the judgment upon the purchaser, or privy, related
back to the date of the filing of such notice for record
in the office of the county clerk and recorder, if such
notice was sufficient and effective to charge him with
constructive notice of the suit affecting title to the prop-
erty described in the complaint. As has been heretofore
stated, the record notice contained a complete description
of the land, the name of the defendant as in the com-

plaint, and all other matters required by the code, and was therefore notice that the title to this particular land was in litigation as against *J. Fred Munson.*

2.   There is good reason and abundant authority for holding, as we do, that the names *Monson* and *Munson* are *idem sonans,* and the variation in orthography is immaterial and the objection trivial.   The modern doctrine seems to be, and ought to be, that variant orthography must be such as to tend, at least, to mislead the opposite party to his prejudice.   As illustrating the doctrine of *idem sonans* we cite the following instances wherein names have been held to be *idem sonans: Bosse* and *Busse in Ogden et al. v. Bosse,* 86 Tex., 336; *Bubb* and *Bobb* in *Myer v. Fegaly,* 39 Pa. St., 429; *Forris* and *Farris* in *Lyne v. Sanford,* 82 Tex., 58; *Herman* and *Harman* in *Kahn v. Herman,* 3 Ga., 266; *Johnston* and *Johnson* in *Bank v. Kuhnle,* 50 Kan., 420.   A large number of similar cases are collected in 29 Cyc., p. 272. Further difficulty is found in this case because of the difference between the Christian name and the middle name as given in the patent, and as written in the judgment and proceedings leading thereto.   It will be observed, however, that the initials are the same; that the middle name as in the judgment and proceedings is correct, and that by which he was known.   The identity of the patentee of the land with the defendant in the suit is established by the evidence.   There was no record evidence that the defendant's name was other than that by which he was commonly known.   The object of the publication of summons is to give notice to the defendant of a suit pending, and of its purpose.   It must be evident to every person that a published notice, using the name by which the defendant is commonly known in the community, will as readily attract his attention as if his

real name were used, particularly where the initials are the same; and, that the use of the name as commonly known will much more readily and probably attract the attention of his acquaintances and friends by whom information might be communicated to him, than if the publication had been by his real name by which he was not commonly known.—*Whitney v. Masemore* (Kan.), 89 Pac., 914, 11 L. R. A., N. S. 676. Therefore, so far as service by publication is concerned, as against the pat-entee, the grantor of plaintiff in this proceeding, the service should be held good and the judgment thereon binding as against him. We are well aware that respectable authorities hold that in substituted service by publication the name of the defendant must not only be exact as to orthography, but must contain the full Christian name. With these authorities, however, we are not in accord, and therefore will not follow them, but believe that under modern conditions the better rule is expressed by the supreme court of Kansas in *Ferguson v. Smith et al.*, 10 Kan., 396, in which it was said: "The papers do not give the full Christian names of all the parties, but give the initial letters thereof only. This we think is sufficient. The reason upon which a different rule was once founded in England has never existed in this state. And when the reason for the rule has ceased the rule itself should cease. * * * The full Christian name is now seldom written anywhere. Search the records of our courts, our statutes, the lists of members of the legislature, election returns, written contracts, and other written instruments, newspapers, etc., and everywhere it will be found that as a rule the initials only of the Christian name are used. * * * In consideration of the almost universal custom of using the initial letters only of the Christian name, it is our opinion that no written instrument can at the present time be regarded

as a nullity simply because the Christian name of some person mentioned therein has not been written in full.''

3.   Plaintiff in this case did not receive his deed for the land until after the judgment quieting title as against his grantor was rendered.   At that time the notice of suit pending was, and for more than five months had been, on file and of record in the office of the county clerk, and was constructive notice to plaintiff herein that this land was in litigation upon a suit to quiet title thereto in B. M. Webster as against J. Fred Monson. If he had examined the record, or had it examined, it would have been found that the suit was against a man whose surname was *idem sonans* with that of the person from whom he was contemplating purchase; whose initials were the same; that ''J,'' the initial of the Christian name, might well stand for ''John.''   And upon slight investigation he would have found that the name *Fred* was not only his real middle name but also that by which he was commonly known.   And further inquiry must have readily disclosed that the person named in the said recorded notice was the person who had owned and occupied the land in litigation.   Notwithstanding the conditions revealed by the evidence in this case, the plaintiff failed to introduce any evidence to show that he did not have actual notice or knowledge that the person named in the summons, the decree and the *lis pendens* notice, was the same person with whom he was negotiating for the purchase of the land; nor that he had examined the record and was deceived or misled by the slight difference in the names mentioned.   Sounding an alarm gives no warning to a person who stops his ears, nor visual signal to him who closes his eyes.   The law only contemplates that the warning shall be given, and if it is such as the law requires, the ordinary and usual effect thereof will be presumed.   While many of the

ancient and some recent authorities hold that to consti-
tute notice the name must be exact and in full, it will
be observed that according to these same authorities, a
man might be indicted for crime, tried, condemned and
executed in his nickname, or any other name by which
he was commonly known, but it was not so when the
*sacred rights of property were involved,* for in such a
case it was conclusively presumed that a defendant had
a full Christian name until otherwise disclosed by the
evidence. But rulings of this kind are rapidly passing
with the reasons therefor. We think the distinction made
in *Cruzen v. Stephens,* 123 Mo., 337, 45 Am. St. Rep.,
549, wherein it was said that notice directed to Etta R.
Fisher and ——— Fisher, her husband, was a sufficient
description *plainly to indicate his identity,* and good as
against a collateral attack, is applicable to the circum-
stances here shown. The name as given in the judgment
and in the notice herein was sufficient to indicate identity
to a person of ordinary prudence and caution. In *Jenny
v. Zehnder,* 101 Pa., 296, it was held that the name *Fred
Zehnder* in the index of a judgment was sufficient notice
to put a purchaser on inquiry as to judgment liens
against *John Jacob Frederick Zehnder.* In *Burns v.
Ross,* 215 Pa., 293, it was held that a docket entry against
one whose Christian name is *Francis,* if indexed in the
name of *Frank,* charges a prospective purchaser from
the judgment debtor's heirs with notice of the existence
of the judgment; and that a docket entry indexed *D. J.
Murphy* would be notice to purchasers that it might be
a lien against property owned by *Daniel J. Murphy,* and
cites the case of *Jones's Estate,* 27 Pa., 336, in which it
was held that a judgment docketed against *A. Jones* was
notice of a lien on property in the name of *Abel Jones,*
the court saying: "A description of persons by the

names by which they are commonly known is sufficient in pleading, either criminal or civil."

For the reasons stated, plaintiff is charged with constructive notice of the pendency of said action and bound by the judgment therein against his grantor. In arriving at this conclusion we have not overlooked nor failed to consider the fundamental distinction between personal service and substituted service by publication of summons. An examination of numerous cases has shown that, as said by the supreme court of Iowa (*Hubner v. Reickhoff*, 103 Ia., 368), variance in orthography in names has been held fatal, or otherwise, as the facts of the case would warrant, having in view safety in the application of the rule, and just results. We have no doubt as to just results being accomplished by our decision, and having in view safety in the application of the rule here applied, we add, that it should not be extended beyond the facts as disclosed by the evidence. The judgment of the district court is reversed and the cause remanded with directions to vacate the judgment in favor of plaintiff and enter judgment in favor of the defendant, B. M. Webster, quieting title as prayed for in his cross-complaint.        *Reversed and Remanded.*