# Commonwealth *v.* Scouton, Appellant.

*Criminal law—Jury—Names of jurors—Act of April* 14, 1834, *P. L.* 356.

It is no ground for quashing an array of jurors in a criminal case, that some of the jurors were described in the slips placed in the wheel by their initials, and not by their Christian names, there being neither allegation nor proof that the names by which the jurors were designated did not sufficiently identify them, and nothing to warrant the presumption that they were not the names used by themselves and their neighbors for that purpose.

*Practice, Q. S.—Calling on judge of another district—Certificate.*

Where a certificate filed of record in a criminal case shows that a judge of another district presided at the trial pursuant to a call made by the president judge of the district in which the trial was held, it is no ground for a continuance that the certificate does not affirmatively set forth that the president judge of the district was disqualified or disabled, or that in his opinion the proper dispatch of the public business required that he should have the assistance of another judge.

*Practice, Q. S.—Trial—Continuance.*

A motion for continuance is addressed to the sound discretion of the court, and except in clear cases of abuse of discretion, the refusal of the motion is not assignable for error, even if excepted to at the time.

*Evidence—Cross-examination—Practice, C. P.*

Where a witness testifies in his examination in chief as to what occurred on a particular occasion, cross-examination which does not relate to what was said on the occasion referred to in the examination in chief, and does not tend to show interest or bias is incompetent.

Collateral matters should not be brought out on cross-examination merely for the purpose of laying ground for subsequent contradiction to affect the credibility of the witness.

*Evidence—Witness—Contradiction of witness.*

The stenographer's report of the testimony of a witness given on a former trial should not be admitted in rebuttal, and for the avowed purpose of contradicting the witness, where there is nothing in the former testimony contradictory to the testimony given by the witness on the second trial.

*Libel—Evidence—Public officials—Act of July* 1, 1897, *P. L.* 204.

Where a publication relates to the official conduct of a public officer, and is proper for public information and is true, the publisher indicted for libel is not required to prove more in order to establish a defense unless there be something beyond the mere fact of publication to show malice;

but this privilege may be lost by the manner of the publication. The evidence of malice may be intrinsic from the style and tone of the article.

On an indictment for libel, where the publication charged in effect that the prosecutor drew as an associate judge from the public treasury more money than the sum to which he was entitled, there is sufficient evidence of the truth of the charge for the jury, where the testimony shows that during three years the prosecutor drew for mileage more than double the amount his immediate predecessor drew who resided a further distance from the county seat, and that the business of the court had materially fallen off.

If a publication relating to a public official is a proper one, and legitimate criticism of the prosecutor, the privilege attaching to such a publication under the Act of July 1, 1897, P. L. 204, is not destroyed by the fact that the prosecutor and defendant were not on friendly terms.

Argued Feb. 10, 1902. Appeal, No. 19, Feb. T., 1902, by defendant, from judgment of Q. S. Sullivan Co., Feb. T., 1900, No. 7, on verdict of guilty in case of Commonwealth v. J. G. Scouton. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Indictment for libel. Before MITCHELL, P. J., specially presiding.

At the trial defendant made the following motion:

Now, February 26, 1901, counsel for defendant move the court to quash venire of jurors in this case because the Christian and surname of the jurors are not stated as required by law. J. T. Forbes, J. E. Borton, F. A. Behr and J. W. McCartney, the names of the said jurors, should have been written in full.

The Court: The motion to quash the array of petit jurors is similar to the motion made at the February term of 1900. It is stated by counsel for commonwealth that at that time the motion to quash the array of petit jurors was refused. The minutes of this case show that the array of grand jurors was quashed at that time, but do not show whether the array of petit jurors was quashed or not. The fact that the minutes do not note the quashing of the array would seem to indicate that the motion to quash the array of petit jurors was overruled. In the opinion of the court the stipulation that the Christian names of the jurors put into the wheel shall be used is for the purpose of identification. The general practice in this court, and elsewhere, seems to be to use indiscriminately

the Christian names or the initials.   Most people are identified.
quite as well by initials as by their entire Christian names.   The
court does not think that the motion is well founded, and it is
overruled.   To which the defendant excepts, and at his request
an exception is noted and bill sealed.  [1]

Defendant also made the motion :

Now, February 26, 1901, counsel for the defendant object to
the trial of this case, and most respectfully suggest the fol-
lowing :

1. That a proper certificate has not been filed setting forth
the disqualification, and the call on the Honorable MAX L.
MITCHELL, P. J., of the 29th judicial district of Pennsylva-
nia, to hold the regular term or to try this cause.

2. That the Honorable MAX L. MITCHELL, president judge
of the 29th judicial district of Pennsylvania, has no right,
power, jurisdiction or authority to try said cause.

3. That no legal court has been convened or is in session for
the trial of this cause.

The Court : This is a very embarrassing motion for the court
to decide at this time.   However, it being called to the atten-
tion of the court that the following certificate has been made
and signed by Judge DUNHAM, to wit :

Commonwealth            }    In the Court of Quarter Sessions
          v.            }    of Sullivan County, No. 7, February
John G. Scouton.             Sessions, 1900.   Charge, Libel.

the above cause is certified to Honorable MAX L. MITCHELL,
president judge of the 29th district of Pennsylvania, for him
to dispose of.

December 1, 1900.                    EDW. M. DUNHAM, P. J.

We think that the objection of the defendant to Judge
MITCHELL's proceeding with the case must be overruled.   To
which the defendant excepts, and at his request an exception
is noted and bill sealed.

MAX L. MITCHELL, P. J.   [Seal] [2]

The court refused to continue the case upon application
of counsel for defendant on account of absence of a material
witness.  [3]

B. F. Babcock was asked the question : "Q. Did you ever

have any conversation with J. G. Scouton in which the name of Judge Kraus was mentioned?   A. Yes, sir, once."

Counsel for defendant object to the question as not cross-examination.

Counsel for commonwealth propose to ask this witness whether he didn't tell certain parties that Mr. Scouton had told him certain things (giving him the words) about Judge Kraus.

This for the purpose of giving the witness an opportunity to admit or deny whether he did tell certain parties certain things and if witness denies it to contradict him.

Counsel for defendant object that this witness cannot be contradicted on any matter that is not material and that does not pertain to the evidence given by him in chief, namely, the denial of the alleged conversation between Mr. Bovee and the defendant; that to contradict the witness on other matters is immaterial and irrelevant, and the offer is vague and indefinite.

THE COURT: The purpose of the question being to show the bias of the witness, if he has any, and for the purpose of contradicting him, in the opinion of the court, the question is competent.   The objection is therefore overruled, and the evidence admitted; to which the defendant excepts and at his request an exception is noted and bill sealed. [4]

" Q. You were asked upon a former trial of this case if you had had a conversation with Mr. Scouton in regard to Judge Kraus, were you not?"

Counsel for the defendant object to the question as immaterial and incompetent.

THE COURT: I think it is competent, and the objection is therefore overruled.   To which the defendant excepts and at his request an exception is noted and bill sealed.

" Q. You were asked upon the former trial of this case the question if you had a conversation with Mr. Scouton in regard to Judge Kraus, were you not?   A. I don't think I was asked on the other trial whether I had talked with Mr. Scouton about him or not.   If I was I don't remember it.   Q. If you were asked that question, what was your answer?   A. I don't think I was asked it.   Q. Is it not a fact that your answer was, No, sir.   A. If I was asked it that was my answer, yes, sir.   If I was asked that question on the other term of court that was my answer, No, sir, that I did not.   Q. Your answer is now

that you did?    A. I did, yes, sir.    Q. Then you have changed your opinion since?"

THE COURT: Was this conversation since the last term of court?    A. No, sir."

"Q. (Mr. Mullen) Then your answer at this time is different from what it was the last time?    A. I might have made a mistake.    A person is liable to make a mistake once in a while. Q. Are you acquainted with James Thall of Cherry township? A. Yes, sir."

Counsel for the commonwealth propose to ask the witness on the stand whether or not he had a conversation with John G. Scouton in the spring of 1898 in which John G. Scouton told him that he was going to ruin Judge Kraus, and whether or not he communicated this conversation to James Thall and John Yonkin of Cherry township on or shortly after the time in which the alleged conversation between himself and Scouton took place.

This for the purpose of showing the bias of the witness in this transaction and as affecting his credibility.

Counsel for the defendant object to the offer for the reason that it has no relation to the subject-matter to which the attention of the witness was called in chief; that the witness cannot be impeached or his testimony discredited by matters irrelevant to that in reference to which he was examined in chief; that this is not the proper method of impeaching the credibility of a witness offered by the defendant for the purpose of contradicting the evidence of a witness called on behalf of the commonwealth in regard to a statement alleged by said witness to have been made by Mr. Scouton, the defendant, to Mr. Bovee, in the presence of the witness on the stand.

The Court: In the opinion of the court the witness may be asked whether he had a conversation with Mr. Scouton in which Mr. Scouton said he would ruin Judge Kraus; but when counsel for commonwealth propose to follow that with proof that the witness made this statement to other people it certainly is not competent evidence.

Counsel for commonwealth propose to ask the witness whether or not he had a conversation with John G. Scouton in the spring of 1899, in which John G. Scouton stated to him that he was going to ruin Judge Kraus, or words to that effect.

Counsel for the defendant object to this offer for the reasons stated in their objections to the two last preceding offers on the part of the commonwealth; and for the additional reason that this is a part of the commonwealth's case in chief, and the attention of the witness was not called to this subject-matter by the counsel for the defendant in his examination in chief; that it is an indirect way of getting from this witness testimony for the purpose of discrediting him, which, if true, should be offered by the commonwealth in rebuttal or in its case in chief.

The Court: I am very doubtful whether it is competent, but I will overrule the objection and admit the evidence. To which defendant excepts and at his request an exception is noted and bill sealed.

" Q. State whether or not you had a conversation with John G. Scouton in the spring of 1899, or thereabouts, in which he told you he was going to ruin Judge Kraus? A. I did not. Q. Did you at any time, before or after this time, have such conversation? A. No, sir."

Counsel for defendant desire the court to grant them an exception to these questions.

The Court: The defendant excepts to the last two questions asked witness and at his request an exception is noted and bill sealed. [6]

Counsel for commonwealth now propose to ask this witness whether or not in the spring of 1898 he told James Thall and John Yonkin that John G. Scouton had told him that he would ruin Judge Kraus. This to be followed by evidence of James Thall and John Yonkin that he did so state to them, that Mr. Scouton had told him he was going to ruin Judge Kraus.

For the purpose of affecting the credibility of this witness.

Counsel for defendant object to the offer for the reason that it is not the proper way to impeach a witness offered by defendant, said witness's attention having been called to a specific matter, namely, to a conversation alleged to have been had between Mr. Scouton and Mr. Bovee at the former's office on May 8 or 9, 1898; that nothing which the witness could say outside of the presence of Mr. Scouton could affect the defendant in this case. Nor can the witness be impeached on a matter which is immaterial and irrelevant. Nor could he be contradicted by the witnesses designated, Thall or Yonkin, it being hearsay evidence.

The court: It appearing from the evidence in this case that the witness has been more or less in the employ of the defendant, we think the evidence is proper as tending to show the bias or interest of the witness. The objections are therefore overruled and the evidence admitted; to which defendant excepts and at his request an exception is noted and bill sealed. [7]

Wallace Norton called on behalf of the defendant, sworn and examined in chief.

Mr. O'Boyle: Counsel for defendant propose to show by the witness on the stand that he had a conversation with Judge Kraus in relation to this cartoon, and that Judge Kraus said to him that the cartoon didn't hurt him, that he looked upon it as a joke; that he was not in the office for the good of his health and he was going to get all he could out of it.

Counsel for commonwealth object for the reason that if the evidence offered were proven it would not justify nor tend to justify the publication of the article complained of in this indictment; that Judge Kraus being simply a witness for the commonwealth any statements that he might make in relation to this cartoon could not change the effect of the same as evidence. The testimony is therefore irrelevant, incompetent and immaterial.

The court: The objection is sustained and the evidence rejected; to which the defendant excepts and at his request an exception is noted and bill sealed. [9]

George Shaffer called on behalf of the defendant, sworn and examined in chief.

Mr. O'Boyle: Counsel for the defendant propose to show by the witness on the stand that he is overseer of the poor of Cherry township; that he has been around the courts of this county considerably and is familiar with the conduct of public affairs here; that he has held the office of road commissioner as well as overseer; that he has made a careful investigation of the length of time occupied by the judges in the transaction of legal business in this court; and that in that estimate which he made it was discovered that the legal business of this county could easily be conducted for each year in thirty days; that this information was given to Mr. Scouton before the article complained of was published.

Counsel for the commonwealth object to the offer for the reason that there is nothing to indicate that this witness is competent to form an opinion of any kind that would be entitled to any consideration whatever as to the number of days that are necessary to discharge the legal business in Sullivan county; that it is not proposed by this offer to show that, even though the witness did make such an estimate, that it was conveyed by him to John G. Scouton prior to the time of the publication of the article which is the foundation of this indictment; that it would be incompetent for any purpose and is entirely irrelevant and immaterial.

The Court: There being nothing in the offer to show that the witness on the stand is competent to form an opinion upon the matter proposed to be proved by him, the objection is sustained and the evidence excluded; to which the defendant excepts and at his request an exception is noted and bill sealed.

Counsel for defendant now renew their offer and add to the same that they propose to show that the witness is familiar with the business of the court, and that his calculation and estimate from his familiarity with court business and the legal business of this county shows that it would not require more than thirty days to discharge all the legal business of this county in any one year.

Counsel for commonwealth object to this offer for the same reason that was stated in their objection to the last preceding offer on the part of defendant.

The Court: Same ruling, exception and bill sealed. [10]

Counsel for commonwealth offer in evidence the record of testimony filed in the case of the commonwealth against John G. Scouton, No. 7, February Sessions, 1900; charge, libel; reported by Arthur Head, court stenographer; call particular attention to the testimony of B. F. Babcock, which is found upon pages 176 and 177 of said record of stenographer's notes, which have been duly filed in this court.

This for the purpose of showing that at a former trial of this case he testified differently from what he has testified in the present trial, to matters which were asked him upon examination and cross-examination; and this for the purpose of affecting his credibility.

Counsel for the defendant object to the offer as irrelevant; that there is nothing in the offer to indicate that the testimony is material to the issue on which he was cross-examined and which is now offered; that the notes have not been properly identified, nor has the stenographer who made the notes identified them; that it does not appear of record that it is in contradiction of any material part of the evidence offered by the commonwealth on this trial. Furthermore, that a witness be asked questions upon cross-examination, in relation to matters not called to his attention in chief, and then contradicted on such cross-examination afterwards by showing a record taken by a court stenographer who is not here present to identify his notes, which notes are a copy of the original notes made upon the original hearing of this case.

The Court: It appearing that the notes of testimony offered, from which commonwealth's counsel propose to read, are duly certified by the official stenographer who took the testimony, and that they are produced from the records of this court, the evidence offered is, in the opinion of the court, admissible for the purpose offered. The objection is overruled and the evidence admitted; to which the defendant excepts and bill sealed. [11]

The court charged in part as follows:

[In order that you may have a clear conception of the burden which the defendant has assumed when he attempts to establish his innocence, because of such a defense as this, it is right that I should state to you, with some accuracy and fullness, the measure up to which the defendant must offer proof in order to sustain this contention.] [12]

[In other words, gentlemen, in assuming this defense the defendant has assumed the burden of proving to you that this publication was a publication not actuated by malice or ill-will, but inspired by a laudable desire to subserve the best interests of the public in this county, or in this commonwealth in general, and that the publication was made on a proper occasion, in a proper manner and in a proper spirit. And the defendant, John G. Scouton, goes upon the witness stand himself and calls various witnesses to prove this allegation on his part.] [13]

[He called B. F. Babcock, who testifies that he was in the office of John G. Scouton at the time Bovee was there, on or about the 9th day of May, 1898, and Mr. Babcock denies that any such conversation as Mr. Bovee alleges, in which Mr. Scouton reflected upon the character of Judge Kraus, or upon the character of other members of the bench of Sullivan county, took place.   Mr. Babcock, upon cross-examination, admits that on a previous trial of this case he made some statements which do not correspond exactly with statements which he makes upon this trial of the case.   These statements were not made upon matters material to the case at issue, but they are introduced in the cross-examination to show to you that the evidence of Mr. Babcock is not reliable because his memory varies from time to time.   And in order to contradict Mr. Babcock still further the commonwealth in this case reads excerpts from his former testimony showing that he testified in matters on the other trial of this case, contrary to the manner in which he testified upon the same matters at this trial of the case, and in such a manner that, as the commonwealth alleges, he could not have so varied his testimony because of a lapse of memory, but only because the variance was wilful.] [14]

[But when John G. Scouton sets up before you the defense that these publications were made because the gentlemen in reference to whom they were made were in public places, and that they were for the benefit of the public, the burden lies upon him to prove to you that the publications were for the benefit of the public, and that they were of the character and made in the manner which I described to you in the early part of my charge.] [15]

Defendant's points were among others as follows:

4. That in determining malice the jury must take into consideration the occasion of the publication, the information of the defendant, and the state of mind he was in at the time of the publication, and the information he had, and that if the publication was made upon probable cause and in good faith, from a sense of public duty, he should be acquitted.  *Answer:* That point, gentlemen, is affirmed, with this qualification, that the publication must not only be made in good faith, but that it must be made in a proper manner.   In other words, he has no right to vilify a man wantonly in a publication of this or any

other kind; but if he has the right to publish a criticism of his conduct as an official he must publish that criticism in a proper manner.] [16]

[5. That if the defendant had probable cause to make these charges, if they were not negligently made, and if made without malice, it would be a defense even if the charges were untrue. *Answer :* Affirmed, with the same qualification as stated in the court's answer to the preceding point.] [17]

[9. The official action of a public officer is at all times a proper subject of inquiry by the citizen, and for information by the public; and the publications charged in this indictment come within the class of cases protected by the constitution, and the privilege is not destroyed by the ascertainment from proof, which may be offered in the case, that the prosecutor and the defendant were not on terms of friendly intimacy. *Answer :* That point, gentlemen of the jury, is affirmed ; yet in determining the intent of this publication you cannot help taking into consideration the feeling existing between the defendant and Judge Kraus.   If the publication was a proper one, and legitimate criticism of Judge Kraus, the feeling existing between Judge Kraus and the defendant should not be taken into consideration ; yet in determining what the character of the publiation really was, it is almost impossible for you to avoid taking into consideration, to some extent, the feeling between these two parties.   You are to determine, however, whether that feeling did influence the character of this publication or whether it did not.] [18]

[10. Proof of extravagance or unreasonable expenditures of money, or claims presented for mileage and paid by Judge Kraus, are competent evidence as going to show corruption and dishonesty on the part of Judge Kraus, and may be taken into consideration with the other evidence in the case to show the belief of the defendant in the truth of the publications, to rebut any presumption of malice arising from the publication itself, even though there is no direct evidence offered by the defendant in answer to the charges contained in the indictment. *Answer :* This point, gentlemen of the jury, is affirmed.   I might say, however, in passing upon this point, that there is no actual evidence in this case that Judge Kraus drew more in any one year from the public treasury than the sum to which he was

entitled.    The defendant, for proof of that fact, relies upon the difference between the amount received by Judge Kraus and his predecessors in office, whom the defendant alleges did nearly the same amount of business as was done by Judge Kraus.] [19]

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were (1) refusal to quash venire.    (2, 3) Refusal of continuance.    (4–11) Rulings on evidence.    (12–19) Above instructions, quoting them.

*James W. Piatt, P. A. O'Boyle* and *John M. Garman,* for appellant.—Initials are no legal part of a name, the authorities holding the full Christian name to be essential in the following cases : Norris v. Graves, 4 Strob. (S. C. Law) 32; Seely v. Boon, 1 N. J. Law, 138; Chappell v. Proctor, Harp. (S. C. Law) 49; Kinnersley v. Knott, 7 C. B. 980; Turner v. Fitt, 3 C. B. 701; Knox v. Starks, 4 Minn. 20; Kenyon v. Semon, 45 N. W. Repr. 10; Beggs v. Wellman, 82 Alabama, 391; 2 So. Repr. 877; Nash v. Collier, 5 Dowl. & L. 341; Fewlass v. Abbott, 28 Mich. 270; Gardner v. State, 4 Ind. 632; Franklin v. Talmadge, 5 John. 84; Roosevelt v. Gardiner, 2 Cowen, 463; Milk v. Christie, 1 Hill, 102; Frank v. Levie, 5 Robert. 599.

A certificate setting forth the cause of disqualification of the judge of the district is necessary : In re Judge's Application, 64 Pa. 33; Wallace v. Jameson, 179 Pa. 113; Com. v. White, 161 Pa. 576.

Privilege of a postponement is an absolute right where either party can produce satisfactory reasons for the request : Morgan v. Com., 14 Bush. (Ky.) 106; Sherry v. Tyson, 4 Phila. 20; Comley v. Lloyd, 1 Browne, 375.

A cross-examination must be confined to matters asked of the witness in chief : Hughes v. Westmoreland Coal Co., 104 Pa. 213; Hopkinson v. Leeds, 78 Pa. 396; Fulton v. Central Bank of Pittsburg, 92 Pa. 113; Floyd v. Bovard, 6 W. & S. 75; Hildeburn v. Curran, 65 Pa. 59.

A communication to be privileged must be made upon a proper occasion, from a proper motive and based upon reasonable or probable cause ; when so made in good faith the law does

not imply malice from the communication itself, as in the ordinary case of libel, but actual malice must be proved, and whether the communication be privileged or not is a question for the court, not for the jury: Briggs v. Garrett, 111 Pa. 404; Press Co. v. Stewart, 119 Pa. 584; Com. v. Singerly, 15 Phila. 368; Com. v. McClure, 1 Pa. C. C. Rep. 207; McGaw v. Hamilton, 15 Pa. Superior Ct. 191; White v. Nicholls, 3 Howard (U. S.), 266.

The burden of proof never shifts to the defendant in a criminal prosecution, even when the commonwealth has made out a prima facie case: Com. v. McKie, 1 Gray (Mass.), 64; Com. v. York, 9 Metc. (Mass.) 125; Com. v. Webster, 5 Cush. (Mass.) 305; Com. v. Eddy, 7 Gray, 584; Watson v. Com., 95 Pa. 422; State v. Flye, 26 Me. 312; Doty v. State, 7 Blackford, 427.

The rule of law is, that where it is shown that the communication is privileged the burden of proof is on the plaintiff to show actual malice or malice in fact: Lewis v. Chapman, 16 N. Y. 369; 2 Greenleaf on Evidence, sec. 418; Swan v. Tappan, 5 Cush. 104; Wharton's Crim. Ev. (9th ed.) sec. 339.

If, however, the privilege was only qualified, the burden is on the plaintiff to prove actual malice: Briggs v. Garrett, 111 Pa. 413.

Whether the communication be privileged or not is a question for the court, not for the jury, and to be privileged it must be made upon a proper occasion on a proper motive, and based upon a reasonable or proper cause: Jackson v. Pittsburg Times, 152 Pa. 406; Com. v. Singerly, 15 Phila. 370.

*E. J. Mullen*, with him *A. J. Bradley*, district attorney, and *F. H. Ingham*, for appellee.—The witness may be asked on cross-examination any question which bears on his credibility: Com. v. Eaton, 8 Phila. 428; Gaines v. Com., 50 Pa. 319; Yeager v. Weaver, 1 Leg. Gaz. 156; Clark v. Trinity Church, 5 W. & S. 266; Goersen v. Com., 106 Pa. 477.

A reading of this testimony shows that the record of evidence taken at the former trial, offered, did not contradict the testimony of the witness in any particular: Travis v. Brown, 43 Pa. 9.

A reading of the entire charge discloses that the court laid down the law almost in the exact words that were used in the

opinion of the court in the case of Conroy v. Pittsburg Times, 139 Pa. 334, and Com. v. Swallow, 8 Pa. Superior Ct. 605.

Malice and negligence are in law presumed from a defamatory publication ; where the defense is based on their absence the burden of proof falls ,on the defendant, but the commonwealth may, in its discretion, offer evidence in rebuttal : Com. v. Swallow, 8 Pa. Superior Ct. 539 ; Com. v. Little, 12 Pa. Superior Ct. 636 ; Com. v. Terry, 15 Pa. Superior Ct. 608.

OPINION BY RICE, P. J., July 10, 1902: .

1. In Jones's Estate, 27 Pa. 336, where a judgment was entered against " A. Jones," whose name was " Abel Jones," and it was proved that he was well known by the abbreviated designation, and that he uniformly wrote his signature in that way, and that there was no other person in the county for whose name it would answer, it was held that the lien was well entered and was entitled to preference over one subsequently entered against " Abel Jones."    In Laflin & Rand Co. v. Steytler, 146 Pa. 434, it was held that the provision of the Act of June 2, 1874, P. L. 271, requiring that the statement to be signed and acknowledged by persons desiring to form a limited partnership association shall " set forth the full names of such persons," is sufficiently complied with when the names with which the statement is signed and acknowledged are the names habitually used by the persons in business, and those by which they are generally known in the community.    " The object aimed at was the identification of the person, and the requirement of his full name had nothing further in view. . . . A name, therefore, is the title used for the identification of an individual, and the intent of its requirement in full is certainty of such identification.    The full name, therefore, is no more than the whole of such title, as it is used by himself and his neighbors for such purpose."    The statutes construed in these two cases are not less imperative in requiring the full name to be set forth than is the 88th section of the Act of April 14, 1834, P. L. 356, which provides that in filling the jury wheel " the name, surname and addition or occupation and place of abode of each one of the persons selected " shall be written upon the slips to be placed in the wheel.    The object aimed at by the legislature in each instance being the identi-

fication of the person, when this is accomplished the require-. ment of the statute is fulfilled. In the present case there was neither allegation nor proof that the names by which the jurors were designated did not sufficiently identify them. Nor do we think it was to be presumed that they were not the names used by themselves and their neighbors for that purpose. We conclude, therefore, that the court committed no error in overruling the motion to quash the array.

2. It is urged in support of the second assignment of error that a certificate setting forth the cause of disqualification or disability of the president judge of the district and the call on the president judge of the 29th district to hold the regular term or to try the cause, should have been filed of record, and there being no such certificate the latter judge had no right, power, jurisdiction or authority to try the cause. True the certificate filed does not affirmatively set forth that the president judge of the district was disqualified or disabled within the meaning of the act of 1834, the act of 1856, or the act of 1860, nor that in his opinion the proper dispatch of the public business required that he should have the assistance of another judge at that term, as provided in the act of 1887. But, giving the certificate a reasonable intendment, the record does show that the president judge of the 29th district presided at the trial pursuant to a call made by the former. Presumably, there was a legal reason for the call: Commonwealth v. Bell, 4 Pa. Superior Ct. 187.

3. The third assignment of error does not appear to be based on any bill of exceptions; but aside from that, it is well settled that a motion for continuance is addressed to the sound discretion of the court, and except in clear cases of abuse of discretion the refusal of the motion is not assignable for error, even if excepted to at the time. We find nothing in the evidence adduced in support of the motion to take this case out of the general rule. See Commonweath v. Dietrich, 7 Pa. Superior Ct. 515 ; Commonwealth v. Craig, 19 Pa. Superior Ct. 81.

4. The fourth, fifth, sixth, seventh, eighth, eleventh and fourteenth assignments relate to the same matter, and may be considered together. A witness named Bovee, called by the commonwealth, testified that in a conversation which took place between him and the defendant, the latter made certain dec-

larations clearly showing express malice on the part of the defendant. The defendant called a witness named Babcock, who testified that he was present on the occasion referred to and that the defendant made no such declarations at that time. This was the full extent of his testimony in chief. Upon cross-examination, the commonwealth's counsel were permitted to ask this witness whether or not he had a conversation with the defendant in which the latter declared that he was going to ruin the prosecutor. The witness having answered in the negative he was then asked in spite of the defendant's objection, whether he, the witness, had not stated to other parties, naming them, that the defendant had made such declarations to him. This cross-examination was clearly incompetent and should have been excluded, because it did not relate to what was said on the occasion referred to in the examination in chief, and did not tend to show interest or bias. If, however, it had ended here, it would have been harmless, because the answers were not prejudicial to the defendant and no attempt was made to contradict the witness in the particulars thus far referred to. But it did not end here. In the course of the cross-examination the commonwealth's counsel, under objection and exception, were permitted to ask the witness whether or not the defendant had told him that the prosecutor and his associate were taking more money out of the treasury than they were entitled to get. The witness answered in the affirmative. The materiality of this testimony is not apparent; certainly it was not relevant to any matter to which the witness had testified in chief, and the objection should have been sustained for that reason. This error, likewise, might have been harmless, had it not been followed by an attempt to contradict the witness in this collateral matter. But in rebuttal, and for the avowed purpose of contradicting the witness, an extract from the stenographer's report of his testimony given on a former trial was read, in which the witness admitted that he had told Judge Yonkin, that he had seen it stated in the defendant's newspaper that the prosecutor and his associate were taking more money out of the treasury than they were entitled to, but denied that he had stated to Judge Yonkin that the defendant had told him so. This was in no sense contradictory of any testimony the witness gave on the present trial, and should have been

excluded for that reason, even if his testimony on the former trial had been properly proved, as to which latter objection, see the recent decision of the Supreme Court in Edwards v. Gimbel, 202 Pa. 30. Collateral matters should not be brought out on cross-examination, merely for the purpose of laying ground for subsequent contradiction to affect the credibility of the witness. But a considerable latitude must be allowed to the discretion of the trial court in the matter of cross-examination. The appellate court will not reverse unless convinced of clear error in the exercise of this discretion, which may have worked injury to the party complaining. Standing alone the rulings upon the cross-examination of the witness and the admission of the excerpt from the testimony given on the former trial, while erroneous, might possibly be regarded as harmless, because, as the counsel for the commonwealth now frankly concede, this latter testimony did not contradict the testimony given by him on the second trial in any particular. But the difficulty in the way of dismissing the assignments upon this ground is, that much of the objectionable cross-examination was for the express purpose of laying ground for contradicting the witness, that the testimony given by him upon the former trial was offered and admitted for the purpose of contradicting him as to these collateral matters, and that in the instructions complained of in the fourteenth assignment the court permitted the jury to find that the attempt thus to contradict the witness, and thereby affect his credibility, had been successful. Viewing the rulings under discussion in the light of these instructions, we are unable to conclude that the error was harmless. Therefore these assignments are sustained.

5. In the first count of the indictment the defendant was charged with the publication of a libelous cartoon in a newspaper owned and conducted by him, which imported and conveyed the meaning that Conrad Kraus, an associate judge of the county of Sullivan, " was wanting in integrity in the performance of his duties as said associate judge and that he had wrongfully and fraudulently sworn and vouched to the auditor general of the said commonwealth to having traveled more miles than he rightfully should have done and thereby secured from the state treasury a greater compensation as associate judge than he was justly and rightfully entitled to, and meaning, illus-

trating and importing by the said picture that the office of associate judge was being used by the said Conrad Kraus . . . . for and with the fraudulent and dishonest purpose of unjust and illegal gain." That the cartoon conveyed, and was intended to convey the meaning thus ascribed to it in the indictment, namely, that the prosecutor was guilty of official malfeasance in drawing greater compensation than he was legally entitled to, and of want of integrity in so doing, is not questioned. Judging from the evidence and the points submitted, the defense was of a twofold nature ; first, that the publication was made after due investigation and upon probable cause for belief that the charge was true; second, that it was true. In support of the latter branch of his defense the defendant showed, that Judge Kraus lived about eight miles from the county seat, and drew for salary and mileage for the year ending November 30, 1897, the sum of $831.85, for the succeeding year the sum of $901.15, and for the year following that, the sum of $915.91, and that his immediate predecessors in office, although living farther from the county seat and attending to all the duties of the office, did not draw more than $400 in any one year. He also gave evidence tending to show that the business coming before the court had fallen off, and could be transacted, and was transacted, in twenty-five or thirty days in each year. We think, therefore, that the learned judge fell into error in qualifying his answer to the defendant's tenth point (nineteenth assignment) by saying that " there is no actual evidence in this case that Judge Kraus drew more in any one year from the public treasury than the sum to which he was entitled." This was not an immaterial error as will be seen later.

6. Unquestionably the matter charged in the indictment was prima facie libelous ; it referred to the person named in the indictment as libeled; and its publication was admitted. These essentials of the offense charged in the indictment being established, a prima facie case for the commonwealth was made out. In other words, the commonwealth was not required, in its case in chief, to furnish other proof of malice. If its case had rested here, the defendant would have been put to proof that it was neither negligently nor maliciously made, in order to obtain the immunity from criminal responsibility guaranteed by the constitution. See Commonwealth v. Swallow, 8 Pa. Superior

Ct. 539, and the cases there cited; also Commonwealth v. Rov-
nianek, 12 Pa. Superior Ct. 86.   But the 1st section of the Act
of July 1, 1897, P. L. 204, which was in force when this case
was tried, provided: " That in all criminal prosecutions or in-
dictments for libel, if the matter charged as libelous is in the
opinion of the court proper for public information, the truth
may be given in evidence."    At the outset of his charge the
learned judge undertook to instruct the jury as to " the burden
which the defendant has assumed when he attempts to establish
his innocence because of such a defense as this."   This pre-
liminary statement was followed by instructions which are ap-
plicable and substantially correct where there is no proof of
the truth of the publication.   But as the evidence was sufficient
to carry that question to the jury, the defendant was entitled
to instructions applicable to the case in the event of a finding
by the jury that the matter charged in the indictment as libel-
ous was true.   In view of the provision of the act of 1897 above
quoted, the principle was applicable that where a publication
related to the official conduct of a public officer and was proper
for public information and was true, the defendant is not re-
quired to prove more in order to establish a defense unless there
be something beyond the mere fact of publication to show mal-
ice.   With this qualification the instructions complained of in
the twelfth, thirteenth, fifteenth, sixteenth and seventeenth
assignments would have furnished no ground for reversal.
But in the affirmance of his sixth and seventh points the de-
fendant was given the benefit of instruction, which substan-
tially recognized the principle, and were as favorable as he had
a right to ask.   We therefore do not reverse upon these assign-
ments.

7. It is settled by the decisions that the privilege may be lost
by the manner of the publication; the evidence of malice may
be intrinsic, from the style and tone of the article ": Conroy v.
Pittsburg Times, 139 Pa. 334; Commonwealth v. Little, 12 Pa.
Superior Ct. 636.   " The official action of public officers is at
all times a proper subject for inquiry by the citizen and for in-
formation to the public.   But even when investigation may
reveal conduct that justly deserves censure, a publication on
the subject is not to be made a vehicle for unfounded charges
or malicious detraction.   The truth is not to be distorted in

522 COMMONWEALTH *v.* SCOUTON, Appellant.

Opinion of the Court. [20 Pa. Superior Ct.

order to furnish a basis for denunciation, or invective. Dereliction in public duty is not to be redressed by calumny:" SMITH, J., in Commonwealth v. Swallow, supra at p. 605. The learned judge committed no error in adverting to this qualifying principle in his answer to the defendant's fourth point.

8. In his ninth point the defendant asked the court to charge that the privilege attaching to such a publication as this is not destroyed by the fact " that the prosecutor and defendant were not on terms of friendly intimacy." The correctness of this as an abstract legal proposition cannot be questioned. That fact alone would not destroy the privilege. To hold otherwise would be to make proof of unfriendly relations, without more, presumptive evidence of malice, even though the defendant was not moved by them in publishing the truth with regard to the official conduct of a public officer or with regard to other matter proper for public information and investigation. In affirming the point the court correctly said that if the publication was a proper one, and legitimate criticism of the prosecutor, the feeling existing between him and the defendant should not be taken into consideration; but this instruction was coupled with the remark, "yet in determining what the character of the publication really was, it is almost impossible for you to avoid taking into consideration, to some extent, the feeling between these two parties." This qualification was not called for by anything suggested in the point, but had a tendency to divert the attention of the jury from the consideration of the legal principle to which the point was intended to call specific attention. We think the point should have been affirmed without qualification.

9. The court committed no error in rejecting the offer which is quoted in the tenth assignment. The court properly held that it did not appear by the offer, even as amended, that the witness was qualified to express an opinion as to the number of days in each year that would be required for the transaction of the legal business coming before the court.

10. We are not prepared to say that where the truth of an alleged libelous publication is in issue, the admission of its truth by the person alleged to be libeled would not be competent evidence in support of the affirmative of that issue. But we are not convinced that the declaration alleged to have been

made to Wallace Norton could properly be construed as an admission on the part of the prosecutor that he had drawn, or intended to draw, more money out of the treasury than he was legally entitled to.   Therefore, we do not sustain the ninth assignment.

Judgment reversed and venire facias de novo awarded.