# Commonwealth *v.* Graffius, Appellant.

*Criminal law—Libel—Trial before particular judge.*

A person indicted for libel has no constitutional right to be tried by a particular judge. He cannot object to being tried before a judge specially presiding, called in pursuance of the acts of assembly.

*Libel—Criminal law—Candidate for public office—Privileged communication—Malice.*

Where a publication imputes dishonorable and dishonest action to a person in his professional conduct, as well as in his private life, the publication is libelous per se; and on the trial of an indictment against a person publishing it, the court is justified in expressing its opinion upon its libelous character.

Where a publication reflecting upon the public and private conduct of a candidate for office is libelous on its face, the court commits no error, in instructing the jury that the occasion and subject-matter were proper and in leaving to them the question whether the manner was proper, the publication without malice and based upon reasonable ground. The burden of proof in such a case is on the defendant to disprove malice.

Where a defendant indicted for a publication of an article libelous on its face, testifies that he depended upon street rumors, such testimony is not sufficient to negative the presumed malice, unless the rumors were such as would convince a reasonably prudent man.

Submitted March 14, 1917. Appeal, No. 333, Oct. T., 1916, by defendant, from judgment of Q. S. Blair Co., June T., 1916, No. 28, on verdict of guilty in case of Commonwealth v. H. Price Graffius. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for libel. Before BAILEY, P. J., specially presiding.

The publication is quoted in the opinion of the Superior Court.

The court charged in part as follows:

[The first question of this branch of the case is: Is this paper a defamatory libel? That is a question for you; but, in the opinion of the court, the language of this paper strikes directly at the personal and professional character of Mr. Davis. It implies that, personally, he is a hypocrite, and that, professionally, he is guilty of double dealing, and, therefore, in the opinion of the court, this paper is highly libelous,—but that is for you.] (2)

We say to you that, when the defendant handed this paper to Mr. Kelley, it was a publication within the definition of libel, to which we have called your attention. [If you believe that this paper is not a libel, or have a reasonable doubt about it, then there was no publication of a libel, and the defendant is not guilty of libel, and your verdict should be not guilty,—if you have a reasonable doubt about the character of this paper. If, however, you believe that this paper is libelous, then your next duty is to inquire into the nature of the defense set up by this defendant.] (3). The defendant contends that, even if this paper be libelous, and if it were published by him by handing it to Mr. Kelley, yet he cannot be convicted, because, he contends, that this is a privileged statement. Ordinarily, no man can publish a libelous statement about another, whether it be true or whether it be false, without incurring the liabilities of libel; but, under the Constitution of Pennsylvania, there is a certain class of libels which are exempt from the penalties of law.

[To constitute a privileged communication within the Constitution, there must exist a proper occasion for the publication. It appears, in this case, that Mr. H. A. Davis was, on the Saturday preceding the 16th of May, 1916, when this paper was published, a candidate for the office of a member of the State committee of the Republican party. Therefore, his professional and private character was a matter about which the public should be in-

formed. The occasion, therefore, was proper, and since this paper deals with his professional character, and private character, the subject-matter was proper, if its manner of presentation was proper. If the manner of presenting to the public Mr. Davis' private and professional life was done properly in that paper, then, if the other matters, to which I called your attention, were present, it would be a privileged communication; but whether it was proper or not, or whether it was done in a proper manner or not, is for you. In order to preserve the privilege, there must be not only a proper occasion, and a proper manner of presentation, and a proper subject-matter, but there must also be present the fact that there was no malice, and that there was reasonable ground for making the statements contained in the alleged libel. Malice means, in this case, a desire, not to promote the public welfare, or to inform the public as to the character of the man who has presented himself for public favor, but if the primary motive is a desire to injure him,—in this primary motive lying back of the publication then malice exists.] (4)

[You will notice, from the definition in the Constitution, that the want of that malice must be established by the defendant, if the words are directly defamatory, as the court deems them to be in this case.] (5) [Not only must there be an absence of malice, but there must be present reasonable ground for making the publication. Reasonable ground has been defined by the law to be the possession by the man who writes the paper, and the bringing into court by testimony of such facts with relation to the paper as would lead a reasonable man to conclude that the person who was libeled was guilty of the matters charged against him in the paper. That is reasonable ground. It does not make any difference how wide-spread a rumor may be against a man, or how plausible the stories may be about him, that rumor does not furnish the reasonable ground required by the law. The reasonable ground is facts from which,

as I have stated to you, a reasonable person could infer guilt on the part of the person libeled, of the matters contained in the libel.] (6)

[As I have stated, in this case there was a proper occasion, if the general subject was proper; but, whether it was properly presented in this paper, in a proper manner, is for you. If it was not, then the privilege is removed; and, if you believe the paper to be libelous, the defendant is guilty of libel, and should be convicted, and your verdict should be guilty. But, if you believe that the occasion was proper, and the subject-matter proper, and the presentation proper, then the question is next: Was malice present at the time of this publication in the mind of the defendant? If it was, and that was the primary object of the publication,—namely, to injure H. A. Davis, then the privilege is removed, and you have libel under the law, and the defendant is guilty. But even if malice is not present, if there was no reasonable ground to constitute probable cause to justify the defendant in publishing this libel, then also the privilege is removed, and you have a case of libel made out, and the verdict should be guilty.] (7) [The court desires to say, on this branch of the case, that the court is not able to see here any reasonable ground in the testimony in this case, which in any way preserves this privilege. In the opinion of the court, there is not a scintilla of evidence of facts, showing that H. A. Davis is a hypocrite, personally, or that he ever proved traitorous to any professional matter committed to him. On the other hand, the testimony seems to show that, even under hard circumstances, and through a long period of years, he has proven absolutely faithful, and dealt with the highest fidelity to his clients, the court, and the jurors, in his championship of the cause of temperance in Blair County; but whether or not there is reasonable ground is for you gentlemen—the court is expressing simply its personal opinion.] (8)

[On the question of malice: the defendant has testi-

fied that he bore no malice against this prosecutor, Mr. Davis; that his sole object was the promotion of the public good. Witnesses have been called, to whom he said he was going to get even with those suckers, or going to put them in jail,—referring to Mr. Davis and another gentleman; and that he said to Mr. J. D. Hicks that now was the time to end the political career of Mr. Davis. If you believe that he has met the burden of showing there was no malice, and you also believe there was reasonable grounds, then you can acquit the defendant; or if, upon the whole case, you have reasonable doubt of the defendant's guilt, you can acquit him, but that must be a reasonable doubt, arising spontaneously out of the evidence, without the exercise of your own wills to bring it up; but if, looking at the whole case, the conviction comes to you that the defendant is guilty of defamatory libel, under the definition that we have given to you under this charge, it is your duty to render a verdict of guilty, in manner and form as the defendant stands indicted.]    (9)    [The court feels constrained to say that the vilification of witnesses does not take the place, in courts of justice, of facts. We cannot allow, and we do not think the jurors would be led away from facts, by personal abuse of witnesses. What we are dealing with here are facts, and facts alone.]    (10)

Defendant presented these points:

[The evidence shows that the allegations contained in the article were common rumors and street talk for a long period of time and there was no public denial of these rumors and street talk by the prosecutor, therefore in the publication of the rumors and street talk the defendant was not guilty of negligence.

Answer: That point is refused.]    (11)

If the jury believe from all the evidence that the publication was made without actual malice or negligence for the honest purpose of giving the public information, which it is entitled to have the defendant should be acquitted.

Answer: That point is affirmed, if there was reason-able ground for making the statements contained in this alleged libel, under the charge, as we have given it to you.  (12)

It is incumbent upon the Commonwealth before a conviction can be had to prove actual malice.  There is no evidence of actual malice in this case and therefore there can be no conviction.

Answer: That point is refused.   Malice may be implied.  (13)

If the jury believes that the defendant honestly believed that the statements therein contained were true and the article was published without actual malice, the defendant should be acquitted.

Answer: That point is refused, as stated.   (14)

In determining malice the jury must take into consideration the occasion of the publication, the candidacy of the prosecutor for office, and the arguments put forth by his followers and opponents for and against his candidacy and the state of mind of the public generally during this political fight and particularly the state of mind of the defendant and the information he had from the common street rumors and reliable parties, and that if the publication was made upon probable cause and in good faith and from a sense of public duty, he should be acquitted.

Answer: That point is refused, as stated.   (15)

Verdict of guilty upon which the defendant was sentenced to pay a fine of $100 and undergo imprisonment for four months.

*Errors assigned* were (2-15) above instructions quoting them.  ·

*Thomas H. Greevy,* for appellant.—Defendant objected to being tried by nonresident judge and insisted that he was entitled to be tried by his home judge: Com. ex rel. v. White, 161 Pa. 576; Wallace v. Jameson, 179

Pa. 98; Umbel's Election, 43 Pa. Superior Ct. 598; Philadelphia v. Fox, 64 Pa. 169.

When a communication is privileged it then is incumbent upon the Commonwealth to prove actual malice: Briggs v. Garrett, 111 Pa. 404; Press Co. v. Stewart, 119 Pa. 584; McGaw v. Hamilton, 184 Pa. 108.

Criticism of the official conduct of a public officer is always a proper subject for public discussion and information, and as such is privileged: Mulderig v. Wilkes-Barre Times, 215 Pa. 470; Press Co. v. Stewart, 119 Pa. 584; Jackson v. Pittsburgh Times, 152 Pa. 406; Echard v. Morton, 26 Pa. Superior Ct. 579.

Whether the communication be privileged or not, is a question for the court, not for the jury: Briggs v. Garrett, 111 Pa. 404; Press Company v. Stewart, 119 Pa. 584; McGaw v. Hamilton, 15 Pa. Superior Ct. Reports 181.

*Marion D. Patterson,* District Attorney, and *R. A. Henderson,* for appellee.—The defendant was tried by a regularly constituted court: Com. v. Johnson, 236 Pa. 412; Opinion Attorney General, 39 Pa. C. C. R. 263; Com. v. Bell, 4 Pa. Superior Ct. 187.

The article was libelous: Com. v. Swallow, 8 Pa. Superior Ct. 539; Com. v. Rudy, 5 Dist. Rep. 270.

It is the duty of the court to first determine whether the publication is capable of the meaning ascribed to it, and for the jury to decide whether such meaning is truly ascribed to it: Com. v. Swallow, 8 Pa. Superior Ct. 539.

Communications otherwise privileged lose that privilege if the manner of the publication is improper: Com. v. Little, 12 Pa. Superior Ct. 636; Conroy v. Pittsburgh Times, 139 Pa. 334; Com. v. Brown, 30 W. N. C. 332; Pittock v. O'Neil, 63 Pa. 253.

The burden of proof was upon the defendant to show want of malice and negligence: Com. v. Rovnianek, 12 Pa. Superior Ct. 86; Barr v. Moore, 87 Pa. 385.

OPINION BY WILLIAMS, J., July 13, 1917:

Graffius was found guilty of libel and sentenced to pay a fine of $100 and serve four months in jail. He appeals from that judgment.

In 1916, J. D. Hicks was the candidate of the Republican "Organization," and H. A. Davis, the candidate of the "Antisaloon" or "Temperance" wing of the party, for State committeeman. The latter candidate was a member of the Blair County bar, and had been a leader of the temperance element for many years. Before the primaries in May, defendant presented a libelous article, attacking Davis' character, to Hicks, and later to his son, which he asked them to use or publish. They refused. Later he presented a slightly modified article to C. M. Kelly, managing editor of the Altoona Times, saying he might use it, or part of it, for publication. It was not, however, published, and Kelly presented it to Davis to affirm or deny. Davis thereupon had defendant arrested. The latter, upon hearing that he was to be tried by President Judge BAILEY, specially presiding, demanded that he be tried by President Judge BALDRIGE. This request was refused.

The article complained of was as follows: "H. A. Davis, Blair County candidate for the State Republican Committee. Lincoln once said: 'You can fool some of the people all the time, and all the people some of the time, but you cannot fool all the people all the time.' It might have been well for Mr. Davis to refer to these lines before announcing himself as a candidate for the State Republican Committee. A Dr. Jekyll and Mr. Hyde type of man may play his dual role successfully for years; but sooner or later, evil will out, and a man, of apparently irreproachable character, stands revealed in his true character. Mr. Voter: What manner of man can represent the temperance cause and people, act as a leader in a Christian church, and drink beer in a well known hotel, in the City of Altoona? Is it seemly or consistent for an apostle of temperance, and a church

leader, to handle or indulge in a liquor of any kind? According to our way of thinking, only a Judas Iscariot can or would represent the temperance and church people, of this or any other district, and, at the same time, receive money from brewers and hotel keepers; to incidentally lose remonstrances, from not only one but three wards, and to be loud and bitter in the denunciation of one hotel keeper in Altoona, immediately preceding the last license court, and, upon receipt of, say, one thousand thanks, shut up like a clam. 'Truly, a well paid clam.' Mr. Voter: Will a Dr. Jekyll and Mr. Hyde, and a Judas Iscariot, representing the people of the county on the State committee, respect your wishes and his pledges, or will he serve you in the future as he has in the past, by selling you out? Is it not a reasonable conjecture that money will outweigh the plank, to be placed in the Republican platform? To sink rather than float it."

The first assignment raises the question whether defendant had a constitutional right to be tried by a particular judge. We think not. His right was to be tried by a duly authorized court. Courts of law are impersonal, and when speaking of authority to try cases we mean the court, and not any particular judge: Com. v. Dunleavy, 16 Pa. Superior Ct. 380; Com. v. Miller, 63 Pa. Superior Ct. 548. Under the Act of April 27, 1911, P. L. 101, there can be no doubt of Judge BAILEY's right to preside at defendant's trial: Com. v. Johnson, 236 Pa. 412. Appellant, in his argument, entirely overlooks this statute and assumes that Judge BALDRIGE refused to try the case because of some disqualification. Presumably Judge BAILEY had been called in pursuance of the acts of assembly: Com. v. Bell, 4 Pa. Superior Ct. 187.

The article complained of imputed dishonorable and dishonest action to the complainant in his professional conduct as well as his private life, which is libel per se: Montgomery v. New Era Printing Co., 229 Pa. 165. The court was justified in expressing its opinion upon its

libelous character: Com. v. Little, 12 Pa. Superior Ct. 636.

The objections to the charge are without merit. The defendant contends that the article was privileged because Davis was a candidate for public office. The court told the jury that the occasion and subject-matter were proper, and left to them the questions whether the manner was proper, the publication without malice, and based upon reasonable grounds. The essentials of the offense were thus left to the jury. The burden of proving want of malice rested upon the defendant, it appearing that the article was libelous: Montgomery v. New Era Printing Co., supra. There was no legal proof that the statements in the article were true. The defendant testified that he depended upon street rumors, but these are not sufficient to negative the presumed malice, unless they are such as would convince a reasonably prudent man: McGeary v. Leader Pub. Co., 52 Pa. Superior Ct. 35. Whether or not there was probable cause was a question for the jury, which, from the language used, might have found that the publication was malicious.

There was no error in the court's answers to defendant's points. The fourth was correct so far as it went, but failed to state an important qualification, viz: that if the jury found the street rumors would have convinced a reasonable man, the defendant was not negligent. With the answer to the fifth, it was a complete statement of the law. The sixth point was properly refused. After a prima facie libel is made out, the defendant must disprove malice. The seventh point was defective in that it made the defendant's belief the criterion of probable cause. The eighth point interjected irrelevant matters which the court properly refused to submit to the jury. The ninth point, as qualified, was more favorable than defendant was entitled to expect.

The judgment is affirmed and the record remitted to the court below for the purpose of execution; and to that end it is ordered that the defendant appear in that court

at such time as he may be there called, and that he be by that court committed until he has complied with his sentence, or any part thereof which is still unperformed.