# Commonwealth *v.* Jeffery, Appellant.

*Criminal law—Libel—Privileged communication—Malice—Reasonable or probable cause.*

On the trial of an indictment for libel, the fact that a communication was privileged is not a defense, if the defendant acted through malice, or without reasonable or probable cause.

One charged with libel may be convicted without proof of actual malice, if the jury find that he acted without reasonable or probable cause.

Argued October 5, 1921. Appeal, No. 187, Oct. T., 1921, by defendant, from judgment of Q. S. Phila. Co., Oct. Sessions, 1920, No. 715, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. Harry S. Jeffery. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for libel. Before STERN, J.

The case is stated in the following charge of the court below:

"The Criminal Code of this State provides that: 'If any person shall write, print, publish or exhibit any malicious or defamatory libel, tending either to blacken the memory of one who is dead, or the reputation of one who is alive, and thereby exposing him to public hatred, contempt or ridicule, such person shall be guilty of a misdemeanor.'

"In this case it appears that the defendant, Harry S. Jeffery, was the chairman of the Philadelphia and Camden Advisory Board, and that it was his duty, or function of his office, to take up with the Pennsylvania Railroad grievances between employees and the management of the road, and to start investigations and discussions upon matters of wages and working conditions that affected the men in their relations with the company. In pursuance of that function or duty it would appear that on April 29, 1920, the defendant wrote a letter to Mr. Diven, master mechanic of the Pennsylvania Railroad, in which he called his attention to certain cases then pending, and among other cases were the three cases that are involved at least indirectly in the present proceeding. Having mentioned these cases, in that letter the defendant said that:

" 'If we are compelled to furnish "bill of particulars" about these men, it would necessarily be of a wide scope and will reflect upon, injure and affect certain people who do not care to get into the "spotlight." I am not disposed (if it can be avoided) to place before the world erring women and wives, but if these sordid facts must be taken from the closet—bringing out the naked truth— then it must be, for I have no choice but to press the position of the employees.'

"Then followed a lengthy discussion about morality and about the importance of having employees working for a large corporation moral and pure men, and in the letter the defendant further goes on to say that it is that duty, referring to his duty as chairman, 'imposed upon me by the rank and file of the employees of the Phila-

delphia Terminal Division that compels me to call upon you in this manner for the prompt removal of the aforesaid men, and I am sure, when you go into this matter, you will agree that this request is proper and should be granted.'

"In a subsequent letter, following up the case, a letter dated May 7, 1920, also written by the defendant to Mr. Diven, he says, among other things, 'We have not felt it proper to proceed against these men, from a civil standpoint, nor from a criminal standpoint, but from a moral standpoint. However, it may be, we shall proceed from a criminal standpoint. Two of the men can be prosecuted under the provisions of the Mann White Slave Act, they being guilty, to my personal knowledge, of taking certain women from Philadelphia to points outside the State for immoral purposes—and one of these men is guilty under the law with reference to the use of railroad passes, he having represented that a given woman, not his wife, was his wife.'

"Mr. Diven, to whom these letters were addressed, wrote Mr. Jeffery, in effect calling on him for further information and further facts, or what might be called a bill of particulars. I have not his letter before me at this moment, but you will remember it, and in substance he said that the Pennsylvania Railroad Company would take up these matters, and that if the defendant had any facts or information in regard to it that he should furnish it, because the railroad company, as I recall the letter, was concerned and was interested in what the men did, not only during the actual hours of work but in their private lives, and therefore would consider these cases if further information was given.

"Then came the letter of May 10th, from the defendant to Mr. Diven, which is the basis of the libel charged in this case, and in which the defendant wrote, referring to these three men, Pheneger, Staples and Munce, saying 'We do not feel that we are called upon to furnish any information with respect to them, as the Pennsylvania

Railroad must have knowledge of these facts; if not it could readily obtain such knowledge.' The letter went on to say that 'If these men are in the service of the railroad after May 20th, we shall show them no mercy, prosecuting them from a criminal standpoint. There is no desire on our part to bring about a cessation of work, but if need be, we shall resort to that extreme measure.' That letter enclosed a paper referred to in it, which purported to be a copy of the proceedings of the Philadelphia-Camden Advisory Board at a special meeting held on Sunday, May 9th, and that enclosed memorandum stated that 'Unless they'—referring apparently to these three men—'resign or are removed by May 20th,' it was the intention of the board to prosecute two foremen of the Philadelphia Terminal Division for violation of the Mann White Slave Act, and another man, said to be James H. Munce, for desecrating the American Flag, and for unfairness, dishonesty and disloyalty. As I say, it is this last letter upon which the Commonwealth relies in this case for a verdict against this defendant.

"I do not think it is seriously disputed that the defendant wrote these letters, nor that the three men referred to in these letters are Pheneger, Staples and Munce, as charged by the Commonwealth, although all those questions, together with all other questions in the case, are for you. If you find that he did write those letters and that these are the three men to whom that letter refers, the letter of May 10th, your next question would be to ask yourselves whether the statements made in that letter constituted a defamatory libel, because you have the words of the statute which I quoted to you, which say that the libel must be defamatory. On that point I would instruct you that a libel is defamatory if it imputes to a person the commission of a crime. In this case, if this libel imputes to Pheneger and Staples a violation of the Mann White Slave Act, which is a federal statute of course, it did impute the commission of a crime, and if so it was defamatory. So likewise if it im-

putes to Munce the offense of desecrating the American
flag that also would be a crime, both under federal law
and state law, and if that imputation therefore was con-
tained in the letter it would constitute in the law a de-
famatory libel. It is for you to say what the fair mean-
ing of the words used is, and whether, reading them in the
ordinary way in which an ordinary person would read
ordinary language, it would convey the meaning and
would be evidently intended to convey the meaning that
those men had been guilty of these respective offenses.

"If you find that it does constitute a defamatory libel,
then you come to the next question in the case, which is
really a question for the court rather than for the jury
and will be treated as such by the court, and that is
whether or not this was a privileged communication.
Ordinarily if a defamatory libel is issued by a man that
in itself would make him guilty on a charge of criminal
libel, and it would be no defense even if the statements
alleged are true, because the law does not allow a man
to write or print a libel against another person even if
true, the theory of the law being that the greater the
truth the greater the libel, because it provokes to a breach
of the peace, and that the way of redressing a crime is
not by writing letters to third person about it, but by
bringing the matter to the proper authorities for crimi-
nal prosecution. I say that is the general rule, but there
is under the Constitution of this State and under the law
of the State an exception to that principle, and that is
that there is a class of writings which are known as privi-
leged. By privileged is meant the issuing of a state-
ment in writing or printing which treats of such a sub-
ject-matter, and is written or printed upon such an oc-
casion and in such a manner as to be proper under all
the circumstances for the writing or publication to have
been uttered. That is to say, by way of illustration, if a
man is a candidate for public office, it is not only the
right but might under certain circumstances be the duty
of a person to set forth in writing or otherwise facts

known to that person, or reasonably believed by that person, concerning that man, in order to furnish the public with necessary information upon which to base a conclusion as to whether or not that man was a fit man for public office.  So often in private life inquiries are made by one man of another as to the morals or as to the integrity of a certain person, the ordinary case being where one is about to take another man into his employ and writes to somebody for a reference, and in answer to such inquiry the person gives a reference and may give an unfavorable statement about a person.  That would be what is called a privileged communication, because the subject-matter treated of and the occasion upon which it is written are proper, and it is evident that the publication is not with the intention of hurting the person written about, but in a bona fide desire to give proper information when sought, or to give, as I have indicated, proper information to the public about people who are candidates for or occupants of public office.  In this case it would appear that Jeffery, who was chairman of this advisory board, and incidentally apparently attorney and counsellor at law (at least that designation appears on his letter paper), as chairman of such board had been in the habit of taking up with the Pennsylvania Railroad matters concerning the discharge or retention in employment of various employees.  Whether that was done under Rule 35 of the agreement between the employees and the director general of railroads, or whether it was done under any other law, or whether it was done merely as a matter of custom and acquiescence on the part of the railroad company, would seem to me to make no difference.  The fact remains that for a long period of time this advisory board through its chairman had been taking up these cases with the Pennsylvania Railroad, and the railroad had not only acquiesced in it but had invited that this should be done, and that being so, the court will say to you as a matter of law that this was what I have called a privileged communication, one made

in the proper exercise of the duties of this chairman, acting on behalf of this board, and therefore unless there existed in the writing of this letter and in the sending of it another element to which I will now refer, there would be no libel in this case.

"What is that other element? It is the element upon which I think your verdict on final analysis will have to stand. The law says that even if a communication is privileged in the sense to which I have already referred, nevertheless the person who publishes it, writes it, sends it, is guilty of libel if he does it maliciously, or without reasonable or probable cause for the facts which he sets out in that publication. That is to say, as I have indicated to you once or twice during the course of the trial, the mere fact that the man occupies a certain official position and that it is his function, or even his duty, in the course of that position to give certain information or to make certain charges, would be no excuse for his making charges if he made them maliciously, or if he made them without reasonable or probable cause. In other words, a man cannot abuse his position or the opportunity thus given him simply to go out of his way to defame or vilify persons, either maliciously or with negligence, and by negligence I refer to the absence of reasonable or probable cause. What the Commonwealth contends in this case is not that charges were made against these three men, as for example, that they were unfair to their employees, that either they did not pay them proper wages or that they did not let them work under proper conditions, or that they were arbitrary or unreasonable in their management of men under them. All of these things certainly would not constitute libel. In this case the Commonwealth contends that the defendant added to such charges the personal charge against two of these three men that they had violated the Mann White Slave Act, and against one that he had desecrated the American flag and was otherwise or thereby dishonest and disloyal. Even those charges, if not made ma-

liciously or without reasonable or probable cause, would not in themselves make the defendant guilty of criminal libel. In other words if these men were guilty of those offenses, or if the defendant without malice and on reasonable or probable cause, honestly believed that they were so guilty, he would have had the right to make those charges, because, as I have said to you, the Pennsylvania Railroad Company stated that they considered the moral welfare of their men, on and off their premises, as a fit subject for investigation, and therefore if men of the Pennsylvania Railroad were guilty of these crimes it was proper for this defendant, acting in his capacity, to take those matters up with the railroad company.

"Therefore we come to what I consider the real question in the case, although it is for you not only to answer questions but to say what their relative importance is. When this defendant wrote to the Pennsylvania Railroad, if you find that that is the fair meaning of his words, that two of those men had violated the Mann White Slave Act and another had desecrated the American flag, did he do it without malice and with reasonable or probable cause, with the honest desire to bring this matter to the attention of the Pennsylvania Railroad Company, and thereby, if the Pennsylvania Railroad Company found it proper, to obtain the discharge of these men from the service; or in order to serve another purpose, whatever it may have been, did he make these particular charges maliciously, or without any reasonable or probable cause for their foundation? What was his motive and on what information did he act? He says to you that he had some personal knowledge of the infraction of the Mann White Slave Act. I am not going into all the evidence. It was a bit unsavory at best, and does not call for any repetition here, but in general you will remember he said he saw two of these men, each of them with a woman, one going to Camden and one going to Atlantic City. I might say to you at this point that the Mann White Slave Act is an act that in general pro-

vides against the taking of a woman for immoral pur-
poses across a state line.   The defendant tells you also
that Pheneger and Staples, the two men concerned, made
certain admissions to him that they had been guilty of
immoral conduct, (whether specifically the violation of
the Mann Act or not will be for you to say), and he fur-
ther tells you that other persons, or at least one other
person (I think he said Ford) told him something about
it, and it was on the basis of the personal observation,
the alleged admissions and the information told him by
others, that induced him to have a reasonable and honest
belief that these two men actually had violated this law.

"Malice means merely that a man does something not
with the honest desire to inform the public, or in this
case to inform the Pennsylvania Railroad, and bring
about a change beneficial to the service, but that the act
is performed for another motive, and without an honest
desire to impart information.   By reasonable or probable
cause is meant such cause as would lead an ordinarily
prudent man to believe the information which he receives
and to act upon it.   In the first place, what were the
facts?   Did this defendant see these two men with those
women, and if so, did he really believe or have any ground
to believe that the Mann Act was being violated?   Of
course, seeing a man with a woman in a boat or on a train
does not necessarily mean the Mann Act is being violated,
because men have the right to travel with women in
boats, trains, or any other conveyance for that matter.
I told you what the Mann Act consisted of.   Did he have
the right to believe, from any observation he made?   He
said something about seeing two of them go in a hotel,
the man with a suitcase.   Were those facts true?   Did he
see them?   The men deny it.   Did they make any admis-
sions to him?   The men deny it.   Did anybody give him
any information?   If so, was it information that a rea-
sonable man would have believed and acted on?   Because,
of course, mere gossip, mere slander that permeates and
runs around the streets, byways, highways and corners,

does not constitute the kind of information which ordinarily should lead a man to believe anything. The information, as far as it is imparted to a man from other sources, must be credible information, coming from trustworthy sources, and such as would cause an ordinarily prudent man to believe in it. Therefore the question for you will be to say whether on the observation that this man alleges he made, if he did make it (having in mind also the contradictions of the men themselves), and the information he received, and the alleged admissions that were made by him, if they were made (and the men deny it), all these things furnished him with such reasonable or probable cause for honestly believing that the Mann Act had been violated as would justify him in having made this charge and the implied statements contained in it, to the Pennsylvania Railroad Company. And the same principle applies in the Muntz case. The defendant himself claims to have had no personal knowledge of the Muntz incident. He was not there when this incident of the flag occurred. He says he only got his information from others. Considering who told him, how many people told him, whether the people who told him were themselves present, and what they told him, did he or not have reason to honestly believe that the flag had been desecrated and that insulting remarks about it had been made? If he acted in this matter without malice, and if he acted upon reasonable or probable cause, to believe that those charges were true, then, as I say, the matter was privileged and he ought to be acquitted. If, notwithstanding the matter was privileged as the court has said it was, he acted maliciously or without reasonable or probable cause, to serve some other purpose and not in an honest desire, not honestly believing in the charges or honestly desiring to pass them on to the railroad company for the purpose of having them acted upon, if you believe that and believe it beyond a reasonable doubt, then he would be guilty of the crime of criminal libel.

"There is just one other point I want to mention. That is in regard to his being chairman of the advisory board. That fact is an incident to be taken into consideration with all other facts in the case, as going to the question of his good faith, but in itself it does not constitute a justification. That is to say, the mere fact that a man is head of a committee does not entitle him, even in the performance of his duty, to make libelous charges against other people. As I told you in the course of the trial the President of the United States himself could not in the course of a state paper to Congress or to anybody else, even in discussing public business, make the communication a vehicle of libelous statements against a third person. If he did he would be just as much liable under the law as the humblest citizen in the land. So the fact that he was chairman of this committee in itself does not justify him in writing this letter if in your opinion it constitutes a libelous statement under which he would be guilty. On the other hand, as I say, it is an element that goes into the question as to whether or not he had any malice, and as to whether or not he acted on reasonable or probable cause.

"That, I think, sums up the entire case and gives you the principles upon which you ought to decide the case, and I want in conclusion to tell you not to be misled or influenced by either side into believing that you are deciding any graver or weightier issues than are concerned in this particular case. We are not concerned here with the question of the American Federation of Labor or with the relations of employees and employers. That does not enter into this case at all. This is a different case entirely. The issue is not in any sense that broad. On the other hand we are not concerned with the reputation either of these two women who were on the stand or the three men who were involved, and your verdict does not necessarily either acquit or convict them of the charges which this defendant made against them. That is not the issue. The issue is not, after all, ultimately the

truth of the charges, although, of course, if you believe the charges were true, then this defendant must have had reasonable and probable cause, and your verdict in that case ought to be not guilty. But even if you believe that they were not true, and that those three men and two women were entirely innocent, nevertheless there ought to be no conviction of this man if, as I have said to you, he acted without malice and on reasonable or probable cause. You will remember, as in all criminal cases, that he is to be presumed innocent unless you believe him to be guilty beyond a reasonable doubt, and that by reasonable doubt is meant such a doubt as in important affairs of your own lives would cause you to hesitate to act upon similar evidence.

"Counsel for defendant has asked me to charge you as follows:

"'1. If the jury believe that the defendant had good reason to believe that the statements made by him in the letter were true, and not made maliciously, then your verdict must be for defendant.'

"That point is affirmed.

"'2. In order to convict the defendant the jury must find that the letter in question was written with malicious intent.'

"That is refused as written. If the letter was written with a malicious intent, or without reasonable or probable cause, and it was libelous, in either case a verdict could be found against the defendant.

"'3. If you find that J. B. Diven, master mechanic, and the defendant had a community of interest in the subject-matter set forth in the letter, and there was no malice shown in the writing, then the communication was privileged and your verdict should be not guilty.'

"The court adds the same criticism to that point as the preceding one, namely, that it is not necessary for a conviction that there be malice, but if there be a lack of reasonable or probable cause that also would make the de-

fendant guilty if the other elements of guilt are found by you.

" '4. In this case the alleged libelous letter was requested by J. B. Diven, master mechanic, by authority of the national agreement under which both he and the defendant were working, and it was the right, if not the duty, of the defendant to set forth everything that was and had been brought to his attention concerning the fitness of the prosecutors to hold the positions of foremen which they were then holding.'

"That is affirmed subject to the same qualification as before, namely, that the point is not true if there was malice or if there was lack of reasonable or probable cause.

" '5. I charge you, as matter of law, that the communication set forth in this indictment is a privileged communication.'

"I have already so told you and therefore affirm that point.

" '6. Before you can convict the defendant of criminal libel where the communication is privileged, the Commonwealth must show malice by positive proof, and in the absence of such proof, the presumption is that there was no malice.'

"That I affirm with the other qualification that if there was a lack of reasonable or probable cause the same result would apply as if there was actual malice.

" '7. If this libelous letter were not written with a malicious intent, then it is immaterial whether the contents thereof are accurate or inaccurate.'

"The same criticism applies to that as to the other, namely, that if there be lack of reasonable or probable cause, the other elements of guilt being present, a verdict of guilty would be permissible.

" '8. If you find from the evidence that the charge complained of in the letter is true, then the proper inference should be that the defendant did not act maliciously and your verdict should be not guilty.'

"That is affirmed.  I have already so stated to you in effect.

"The ninth point is refused without reading."

"(The point referred to was as follows:

"'9. The defendant was merely the conduit of the Philadelphia-Camden Advisory Board, System Federation No. 90, which sent the grievances which are the subject of this prosecution, as it does with all grievances, through the defendant, as its chairman, in order that the same might be remedied, and your verdict therefore must be not guilty.')

"The tenth point is declined without reading.

"(The point referred to was as follows:

"'10. Under all the evidence your verdict must be not guilty.')

"I will allow exceptions to the defendant for the refusal of the last two points and the modifications of such points as were modified.

"(Exceptions noted for defendant.)

"Mr. Gery: Your Honor charged the jury that it is not seriously disputed that the defendant wrote these letters. The defendant did not write them in a personal capacity. The defendant wrote these letters, or the letters were promulgated by the advisory board, consisting of eleven men, and he simply signed them and sent them out as promulgated by the men.

"The Court: It is true that the letters are signed as counsel has said, but I have already charged you as to the effect that would have and as to the extent to which it does or does not modify the question of the defendant's liability.  Incidentally, I do not recall that there is any evidence that he was ordered to write such a letter by the advisory board.  There is nothing in the letter which so states, but if I am in error in that, if you recall any evidence to that effect, you will correct me because I have told you that all facts are for your recollection and not for mine, although I again say to you that if the other elements of guilt are present, if this is a defamatory libel,

and if it was written either maliciously or without reasonable or probable cause, chairmanship of a committee, even if the committee ordered the defendant to write the letter, would be no excuse, because nobody is justified in committing what is otherwise a crime merely because any other person or set of persons told or induced him to do it.

"Mr. Gery: I ask your honor to call the jury's attention to the fact that the information given in the letter of May 10th, was not stated as verity and truth, but was given for the purpose of investigating and finding out whether they were true.

"The Court: You have heard what counsel said. You will read the letter yourselves and make up your own minds. I think it proper for the court to say in that connection that the letter said unless those three men resigned or were out of service by a certain date certain things would happen, and the jury have the right to say whether that meant that there was to be an investigation held by the Pennsylvania Railroad Company, or whether there was action demanded if certain things were not done.

"Mr. Gery: The letter itself states that there was a meeting to be held on the 26th.

"The Court: The letter speaks for itself. You will read the letter and consider it in view of the previous correspondence and of all the facts and circumstances in the case.

"Mr. Gery: I ask that the exhibits be sent out with the jury.

"The Court: The district attorney wishes me to add that I forgot to state that the two women also denied the commission of the offenses alleged. I did not mean to go into all the testimony. That is all entirely for you.

"Mr. Gery: I might ask your honor to charge the jury in connection with Mr. Maurer's suggestion, that denial on the part of anybody has nothing to do with the case if the defendant had reasonable and probable cause

218, (1922).] Opinion of Court below—Arguments.

to believe that the statements made were founded on truth.

"The Court: I think I have fully covered that in the charge."

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence, and refusal to affirm points presented by defendant.

*William B. Gery,* for appellant.—To take the case to the jury it was necessary that the Commonwealth should prove actual, express malice: Billings v. Fairbanks, 136 Mass. 177; Shurtleff v. Stevens, 51 Vt. 501; Com. v. Smethurst, 40 Leg. Int. 454; Com. v. Wehr, 35 Pa. Co. Ct. 615; Com. v. Pascoe, 39 Pa. Superior Ct. 163.

*John H. Maurer,* Assistant District Attorney, and with him, *Samuel P. Rotan,* District Attorney, for appellee.—Since immunity of a privileged communication is an exception to the general rule, that nothing short of proof of the truth is a defense to the libel, he who relies on the exception must prove all the facts necessary, and bring himself with it: Mulderig v. Wilkes-Barre Times, 215 Pa. 470.

Probable cause, which will sustain a privileged communication, is a reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty of the offense: Coats v. Wallace, 4 Pa. Superior Ct. 258; Com. v. Swallow, 8 Pa. Superior Ct. 539.

The burden of proof that there is no malice and negligence in the publication is on the defendant, and is a question for the jury: Montgomery v. New Era Printing Co., 229 Pa. 165; Com. v. Graffius, 67 Pa. Superior Ct. 281; Com. v. Pascoe, 39 Pa. Superior Ct. 163; Com. v. Scouton, 20 Pa. Superior Ct. 503.

PER CURIAM, March 3, 1922:

The defendant was indicted under the Act of March 31, 1861, P. L. 408, for libel. A plea of not guilty was entered and after the case was submitted to a jury, a verdict of guilty was rendered and he was sentenced to pay a fine of $200. While the libel charged is somewhat out of the ordinary, the rules of law applicable to the case have been clearly defined in many cases. Every debatable question of fact was fairly submitted to and considered by the jury, and every proposition of law was rightly decided by the court, after full argument.

The charge of the court, which will be printed with the report of this case, was supported by the decisions of the Supreme Court in Conroy v. Pittsburgh Times, 139 Pa. 334; Mulderig v. Wilkes-Barre Times, 215 Pa. 470; Com. v. Swallow, 8 Pa. Superior Ct. 539; Com. v. Storey, 49 Pa. Superior Ct. 283; Com. v. Graffius, 67 Pa. Superior Ct. 281; Montgomery v. New Era Printing Co., 229 Pa. 165, and is nowhere in conflict with Briggs v. Garrett, 111 Pa. 404. No good purpose would be served in supplementing the charge of the court with further argument.

The assignments of error are overruled and the judgment is affirmed.