## Commonwealth v. Zerbey. No. 2

*C. A. Snyder*, district attorney, *R. A. Freiler*, deputy district attorney, and *H. O. Bechtel*, for Commonwealth.

*C. E. Berger, John H. Fertig* and *R. M. Bashore*, for defendant.

HOUCK, J., November 9, 1931.—Defendant was indicted for libel on June 19, 1931. On October 23, 1931, he filed a motion to quash the indictment for the following reasons: (1) That the first innuendo of the indictment is not capable of a defamatory meaning; (2) that the second innuendo enlarges and extends the meaning of any alleged libelous words set forth in the indictment beyond their common and natural meaning; (3) that there is nothing in the alleged libelous words which gives color to the second innuendo of the indictment; (4) that the indictment does not set forth a libel in proper form; and (5) that the indictment does not charge an indictable offense.

The prosecutor is Thomas B. Shoener. It is alleged in the indictment that he is a public official of the City of Pottsville, Schuylkill County, being a member of the city council and superintendent of accounts and finance of said city; that defendant is the president of the J. H. Zerbey Newspapers, Inc., which pub-

lishes the Pottsville Evening Republican, a newspaper of general circulation; and that defendant, maliciously intending to blacken the reputation of Thomas B. Shoener, composed and wrote, and caused and procured to be composed and written, a defamatory libel concerning Shoener, which he caused to be printed and published in said newspaper. The article which is alleged to be libelous is set forth in the indictment as follows:

## "COURT ORDERS INVESTIGATION OF CITY COUNCIL.

### "District Attorney Snyder to Determine

### If Mayor and Council Should Be Removed.

"By direction of the court, District Attorney C. A. Snyder will institute an investigation of the City Administration of Pottsville, and ascertain whether there are just grounds for the removal of the mayor and members of city council on the charge of misdemeanor in office. This is entirely separate from the mandamus proceedings entered against the city council by Patrolman Silas Collins for what is alleged illegal removal from office and demanding his reinstatement.

"The people of Pottsville have been shocked for some time past by the evidences of inefficiency, disregard for public protests, intolerable public conduct and administration of public affairs. This came to a head through an appeal by citizens of the city to the court for relief, and it was in response to this appeal that the matter was referred to the district attorney. There are many things of which the public has complained which are not sufficient cause for removal from office, even if the conduct may be highly criticisable, but, on the other hand, there are numerous complaints of settlement of cases and discharges of serious offenses on minor charges that do constitute misdemeanor in office if found to be correct, and the penalty for such might mean dismissal from office and further punishment.

"There are also allegations that money was expended without legal authorization for junketing trips. It is not known whether these charges were made in the complaint to the court, but they have been made by citizens and will possibly be made the subject of investigation by the district attorney's office.

"Vice conditions in the city are not included in the plans for investigation, as Dist. Atty. Snyder says such investigation would cost many thousand dollars. It is possible some other action will be taken to clean up the reign of gambling, speakeasies and moral conditions in the city.

"In the event of removal from office the court would appoint a new city council to function until the November election."

This is followed by the innuendoes, "meaning thereby that the said Thomas B. Shoener, as a member of council of the City of Pottsville aforesaid and his official acts were ordered and directed to be investigated by the court on charges of misdemeanor in office, and further meaning thereby that the said Thomas B. Shoener, as a member of council of the City of Pottsville aforesaid, was guilty of misdemeanor in office and to be removed from his said office for such."

The applicable legal principles are well defined. "Whether, in the light of the inducement and colloquium, the language will fairly bear the meaning ascribed to it by the innuendo—that is to say, whether it is to be pronounced in law libelous—is to be detemined by the court; whether this meaning was intended by the defendant is to be determined by the jury upon all the evidence:" Com. v. Swallow, 8 Pa. Superior Ct. 539, 613. "Where no new fact is essential to the frame of the indictment and necessary to be found by a grand jury as the ground of a colloquium which cannot be dispensed with, and the only object of

introducing an innuendo is to give point to the meaning of the language of the libel, it is not proper to quash the indictment on the ground that the innuendo may be supposed to carry the meaning of the language beyond the customary meaning of the words used. It belongs to the jury to say whether the meaning averred in the innuendo expresses the true meaning of the words:" Com. *v.* Keenan et al., 67 Pa. 203, 206. If the common understanding of mankind takes hold of the published words and without difficulty applies a libelous meaning to them, an innuendo is not needed, and, if used, may be treated as surplusage: Collins *v.* Dispatch Publishing Co., 152 Pa. 187; see, also, Com. *v.* Phelps et al., 1 Erie 35. If the words used are libelous on their face, no innuendo is necessary, and if the publication is capable of the meaning ascribed to it by the innuendo, it is for the jury to decide whether such meaning is truly ascribed to it. All that the court is to determine is whether the language used is libelous or permits the interpretation placed upon it by the innuendo. If either fact be present, the indictment may not be quashed.

It is our opinion that the article here in question is libelous on its face and that the innuendoes do not place a strained construction upon the words used. The tenor of the entire article is well calculated to blacken the reputation of the prosecutor and to expose him to public hatred, contempt or ridicule. When it is stated that the court ordered an investigation of city council, the language can mean only an investigation for some dereliction of duty or for misdemeanor in office. When it is stated that the district attorney should ascertain if the mayor and council should be removed, the necessary inference is that the members of council have committed some wrong. The article itself refers to a charge of misdemeanor in office, and, read in connection with what precedes it, plainly amounts to a charge of this character against the members of city council. What construction is to be placed upon the phrase "intolerable public conduct and administration of public affairs?" The ordinary person would, without hesitation, infer some criminality from such a statement. Why would citizens appeal to the court for relief unless there was some wrongdoing? The statement that there are allegations that money was expended without legal authorization for junketing trips is a direct charge of misdemeanor in office and applies with peculiar force to the superintendent of accounts and finance of the city council. The article imputes dishonorable and dishonest action to the prosecutor in his official conduct, and this is libel per se: Com. *v.* Graffius, 67 Pa. Superior Ct. 281, 289. We conclude, therefore, that the indictment is sufficient without resorting to innuendoes.

No objection can be made to the first innuendo in the indictment because it is obvious that the article does charge that the court directed an investigation of the official conduct of Shoener on charges of misdemeanor in office, and this statement would tend to blacken Shoener's reputation. Nor are we able to say as matter of law that the words used do not mean, and cannot possibly mean, that Shoener was guilty of misdemeanor in office and was to be removed for that reason. If material at all, it is a question for the jury whether the article has this meaning.

We have carefully considered defendant's elaborate brief and the authorities relied on by him, but find nothing which would warrant us in quashing the indictment. Hence, the motion to quash the indictment must be overruled.

And now, November 9, 1931, the motion to quash the indictment is overruled.

From M. M. Burke, Shenandoah, Pa.

See preceding case